CHESTER H. GRAVES & others vs. WALTER B. JOHNSON.

Suffolk.　March 13, 1901. — May 22, 1901.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Sale*, Validity.

A dealer who sells intoxicating liquors in Massachusetts for transportation to the proprietor of a bar room in another State where the resale of the liquors by the purchaser would be illegal, and who correctly supposes that the purchaser intends to sell the liquors in his bar room in the other State but is wholly indifferent as to whether he does so or not, the purchaser knowing that the seller has no motive in making the sale except to sell his goods in Massachusetts in the usual course of business, may recover the price of the liquors in an action of contract. His divining correctly the defendant's intention does not connect the sale with the illegal consequences sufficiently to make it invalid.

CONTRACT to recover the price of certain intoxicating liquors sold by the plaintiffs to the defendant from September, 1888, to March, 1889. Writ dated December 21, 1889.

The second trial of this case in the Superior Court was before *Hammond*, J., without a jury, and the exceptions were allowed by *Fessenden*, J., after *Hammond*, J., became a justice of this court. The exceptions taken at the first trial were sustained in a decision reported in 156 Mass. 211. At the second trial the following among other facts appeared :

The plaintiffs, at the time of the sales, held a United States liquor license and a wholesale liquor license under the law of Massachusetts, and were wholesale dealers in liquors, teas and coffees. The defendant at the time of the sales was proprietor of a hotel in Bangor, Maine, called the "Penobscot Exchange," and kept an open bar for the sale of liquors in that hotel. The entrances to the hotel were from two streets and the bar was in the corner between the two. The entrance to the bar room was within the hotel and directly opposite the entrance to the billiard room and about six feet from it. The orders for the liquors were taken by the plaintiffs' agent, one Ingalls, at the defendant's hotel in Bangor where the agent was stopping as a guest. The agent testified that the orders were given to him in the office. The defendant testified that he had a wine clerk

who took charge of his bar room, and to whom he was obliged to go and did go to find out what liquors were needed before giving orders for liquors, and that he went with the agent into the bar room and gave the orders to the agent there. The agent had stopped at the hotel as a guest on two or three of his trips to Bangor before obtaining the first order for the liquors. The agent had been selling liquors for the plaintiffs in the State of Maine six or eight years before making this sale, and testified that during the year of these sales he sold $20,000 worth of liquors in the State of Maine. The defendant testified that at the time of giving the first order it was agreed between him and the agent that if the liquors were seized by the State authorities during transportation he would not be responsible for them, and that the plaintiffs should stand any losses until the liquors were delivered to him in Bangor.

From the testimony of Ingalls, the agent, the following appeared: The defendant paid the freight on the liquors. The first order obtained was for a barrel of Boston Old Rum. The plaintiffs' agent had no order book and simply a memorandum was made, which was afterwards written on a printed blank and sent by the agent to the plaintiffs, and which the defendant did not see. With the order was sent the following communication: " To C. H. Graves & Son, Boston: I send the above order subject to your approval; if you ship, follow closely instructions on face and back of this order. It is understood and agreed that delivery is at Boston, and buyer pays his own freight. Respectfully, E. A. Ingalls."

The defendant objected to the admission of this communication. The judge said: " It is simply the representations that were made to them. That is the only effect of it. What he says in that paper is no evidence of the truthfulness of what he said, but only evidence of the fact; what was said to the plaintiffs." The defendant objected to its admission as any part of the contract between the plaintiffs and the defendant. The judge said: " In so far as it states the contract, it is no evidence of the truthfulness; it is only evidence of representations made by this statement."

The second order was as follows : " December 20, 1888, W. B. Johnson, Bangor, Maine, December 20, half barrel of G. O. Tay-

lor Rye, $1.20." The order was followed by the same declaration, addressed to the plaintiffs and signed by Ingalls, as that quoted above.

The defendant objected to its admission as having any bearing on the contract between the plaintiffs and the defendant.

The judge said: "I let it go in as a piece of paper sent by this witness — the agent."

The defendant put in evidence the Rev. Sts. of Maine, 1883, c. 27, and the St. of Maine, 1885, c. 366 ; and it was agreed that the law of Maine, so far as it pertained to this case, was covered by those statutes.

Upon the evidence about the sale, delivery and receipt of the goods by the defendant, about which there was no dispute, the judge found for the plaintiffs for the full amount claimed.

The defendant requested the judge to find that the plaintiffs knew that the sale of intoxicating liquors in the State of Maine was unlawful ; that they knew that the defendant was in the habit of selling such liquors at his hotel in Bangor in that State unlawfully; that they solicited orders from him for such liquors in Bangor, and sold and delivered them to him in Bangor in violation of the laws of that State ; that the defendant's intention at the time of ordering or purchasing the liquors was to sell them in violation of the laws of that State ; that the plaintiffs knew of his intention at the time of the sale ; that by their acts they aided and assisted him in the illegal sale of that liquor ; that they held out inducements for him to purchase of them by their patronage and long credit, and thus facilitated and encouraged him in his unlawful selling ; that they expected, intended and desired that he should so sell, so that he would continue his purchases and augment their profits ; that the sale of the liquors by them to the defendant was made with a view to their being resold by him contrary to the laws of Maine.

The defendant requested the judge to rule :

First, That if the defendant, at the time of making the contract of purchase, intended to sell the liquors contrary to the laws of the State of Maine, and the plaintiffs knew of that intention and made the sale to him, the plaintiffs could not recover. This ruling was refused.

Second, That such sale with such knowledge of intention is,

in itself, evidence that the vendors intended to aid the buyer in the violation of said laws [and this action could not be maintained].. This ruling was given, except the part in brackets.

Third, That if the plaintiffs at the time of the purchase of the liquors of them by the defendant knew that he was in the habit of selling such liquors unlawfully, and knew that he intended to sell the liquors so purchased of them unlawfully, then the sale was made with a view to the liquors being resold contrary to law, and the plaintiffs could not recover. This ruling was refused.

Fourth, That if the orders for the liquors were obtained by the plaintiffs' agent at the defendant's hotel in Bangor, and they were to be delivered to him in Bangor, then the sale was made in Bangor, although the defendant paid the freight, and that the sale was void by the laws of the State of Maine. This ruling was refused.

Fifth, That the plaintiffs in this case are, in the sale of the liquors, bound by the knowledge and intention of their agent Ingalls. This ruling was given.

Sixth, That the plaintiffs' agent, while travelling and soliciting orders and doing business in the State of Maine, is conclusively presumed to know the laws of that State pertaining to the same. This ruling was given.

Seventh, That upon the evidence the sales by the plaintiffs to the defendant were void, whether they were made in Maine or Massachusetts. This ruling was refused.

Eighth, That upon all the evidence in this case the plaintiffs cannot maintain this action. This ruling was refused.

The judge made the following outline of basis of finding: " In this outline I allude only to the main points in controversy. I find that at the time the goods were ordered and delivered, the defendant intended to sell them, or the larger part of them, in his bar room, in violation of the law of Maine and not in the ·original package; that at the time of taking the orders Ingalls supposed, and had reason to suppose, that the defendant so intended; that the plaintiffs personally, at the time of the approval of the order and the delivery of the goods, had no knowledge, thought or care about the said intention of the defendant, or as to what was to be done with the goods by him, and that

neither Ingalls nor the plaintiffs at any time had (nor were supposed by the defendant to have) any desire, intent, interest, expectation, concern or care as to what disposition the defendant would make of the goods, but were absolutely indifferent as to what he would do or intended to do with them, and that their sole motive was (and was supposed by the defendant to be) to sell the goods in Massachusetts in the usual course of business for pecuniary profit, without any inference whatever as to what the defendant should do or intended to do with them, and without any interest, intent or desire to enable the defendant to sell illegally. I find the sale was made and completed in Massachusetts. I do not find that the plaintiffs erased any marks or in any way sought to conceal or did conceal the character of the goods." The judge found for the plaintiffs in the sum of $330.

The defendant alleged exceptions to the refusals of the judge to rule as requested, and also to the admission of the two communications of Ingalls to the plaintiffs transmitting the defendant's orders for their approval. The last exception was not pressed or argued.

*C. J. Martell*, for the defendant.

*A. Hemenway & J. Noble, Jr.*, for the plaintiffs, submitted the case on a brief.

HOLMES, C. J. This is the second time that this case comes before this court. 156 Mass. 211. It is a suit for the price of intoxicating liquors sold here. At the first trial it was found that they were sold with a view to their being resold by the defendant in Maine against the laws of that State; and on that state of facts it was held that the action would not lie. At the second trial it was found that the plaintiffs' agent supposed, rightly, that the defendant intended to resell the liquors in Maine unlawfully, but that the plaintiffs and their agent were and were known by the defendant to be indifferent to what he did with the goods, and to have no other motive or purpose than to sell them in Massachusetts in the usual course of business. Seemingly the plaintiffs did not act in aid of the defendant's intent beyond selling him the goods. The judge refused to rule that the plaintiffs' knowledge of the defendant's intent would prevent their recovery, and the case is here again on exceptions.

The principles involved are stated and some of the cases are collected in the former decision. All that it is necessary for us to say now is that in our opinion a sale otherwise lawful is not connected with subsequent unlawful conduct by the mere fact that the seller correctly divines the buyer's unlawful intent, closely enough to make the sale unlawful. It will be observed that the finding puts the plaintiffs' knowledge of the defendant's intent no higher than an uncommunicated inference as to what the defendant was likely to do. Of course the defendant was free to change his mind, and there was no communicated desire of the plaintiffs to coöperate with the defendant's present intent, such as was supposed in the former decision, but on the contrary an understood indifference to everything beyond an ordinary sale in Massachusetts. It may be that, as in the case of attempts, (*Commonwealth* v. *Peaslee*, 177 Mass. 267, *Commonwealth* v. *Kennedy*, 170 Mass. 18, 22,) the line of proximity will vary somewhat according to the gravity of the evil apprehended, *Steele* v. *Curle*, 4 Dana, 381, 385–388, *Hanauer* v. *Doane*, 12 Wall. 342, 346, *Bickel* v. *Sheets*, 24 Ind. 1, 4, and in different courts with regard to the same or similar matters. Compare *Hubbard* v. *Moore*, 24 La. An. 591, *Michael* v. *Bacon*, 49 Mo. 474, with *Pearce* v. *Brooks*, L. R. 1 Ex. 213. But the decisions tend more and more to agree that the connection with the unlawful act in cases like the present is too remote. *M'Intyre* v. *Parks*, 3 Met. 207. *Sortwell* v. *Hughes*, 1 Curt. C. C. 244, 247. *Green* v. *Collins*, 3 Cliff. 494. *Hill* v. *Spear*, 50 N. H. 253. *Tracy* v. *Talmage*, 4 Kernan, 162. *Distilling Co.* v. *Nutt*, 34 Kans. 724, 729. *Webber* v. *Donnelly*, 33 Mich. 469. *Tuttle* v. *Holland*, 43 Vt. 542. *Braunn* v. *Keally*, 146 Penn. St. 519, 524. *Wallace* v. *Lark*, 12 So. Car. 576, 578. *Rose* v. *Mitchell*, 6 Col. 102. *Jameson* v. *Gregory*, 4 Met. (Ky.) 363, 370. *Bickel* v. *Sheets*, *Hubbard* v. *Moore*, and *Michael* v. *Bacon*, *ubi supra*.

Although a different rule was assumed in *Suit* v. *Woodhall*, 113 Mass. 391, it will be seen that it equally was assumed by the instructions given at the trial, and that the exceptions and the point decided in that case concerned only the imputation to the plaintiffs of their agent's knowledge. *M'Intyre* v. *Parks* never has been overruled. *Dater* v. *Earl*, 3 Gray, 482. *Webster* v. *Munger*, 8 Gray, 584, 587. *Adams* v. *Coulliard*, 102 Mass. 167, 172. *Milliken* v. *Pratt*, 125 Mass. 374, 376.

Exceptions to the admission of letters of the plaintiffs' agent to them for the purpose of showing what they knew are not argued.

*Exceptions overruled.*