BELMONT *v.* JONES HOUSE FURNISHING COMPANY.

Opinion delivered February 14, 1910.

SALES OF CHATTELS—IMMORAL CONSIDERATION.—A contract for the sale of furniture on credit to the keeper of a bawdy house, with the knowledge that it was to be there used, was not illegal if the seller was not interested in the business, and the furniture was such that it might be used for a lawful business.

Appeal from Garland Chancery Court; *Alphonso Curl,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This action was instituted in the Garland Chancery Court by appellee against appellant on a contract between the parties, dated September 1, 1905, and two promissory notes for $417 each, dated November 21, 1907, and due on November 21, 1908, and November 21, 1909, respectively, and upon a mortgage given on November 21, 1907, to secure the payment of said notes.

The appellee set up the contract, which it made an exhibit. This contract shows that for the sum of $993.95 appellee sold to appellant certain household furnishings, and the appellee reserved the title and the right to take possession if the installments of the purchase money were not paid at the time specified. Appellee also set up the notes and mortgage given to secure them, and alleged that the appellant had not paid the purchase money, as evidenced by the contract, notes and mortgage. and prayed for judgment for the balance alleged to be due, and that the property included in the contract of sale and the lot embraced in the mortgage all be sold to satisfy the judgment.

The defense of appellant was as follows: "At the time she purchased the goods from plaintiff she was engaged in running a house of prostitution in the city of Hot Springs, which fact was well known to the plaintiff; that the consideration for the contract and for the notes and mortgage sued on was for furniture supplied by plaintiff to defendant for furnishing a house of prostitution, and was to be paid for, as plaintiff well knew. out of the profits arising from the business of keeping said house of prostitution, and that said contracts, notes and mortgage were founded upon an illegal consideration, contrary to public policy, good morals, and are therefore void, and that there was no other consideration for said contract, notes or mortgage except the illegal consideration aforesaid. That said contract contains the following: And it is expressly understood and agreed by and between the payee and the makers hereof that the title to the above-described property shall be and remain in the said Jones House Furnishing Company until all of said installments of purchase money are fully paid; and that, in default of payment of any one of said installments when due, the whole of this note and all of said installments shall become

and be considered immediately due and payable, and the payee shall have the right to enter and retake possession of said property, or any part thereof, without process of law, and any payments theretofore made on this note shall then go and be considered as rent on all of said property to said payee during the time it may have been in the possession of the makers hereof."

The appellant does not question the purchase of the goods nor the amount of appellee's claim. Her only defense is that the consideration for the contract was illegal; that the furniture was for a bawdy house, which fact appellee knew at the time it sold her the goods, and that appellee sold her the furniture knowing that it was to be paid for out of the profits ot the bawdy house business, and that therefore the contract was void.

The testimony on behalf of appellant tended to show that it was understood between her and Jones, the manager of appellee, that the money to pay for the furniture in suit was to be made out of the bawdy house business, that the contract was made with that understanding. The testimony of appellant tended also to show that the notes and mortgage were given with the understanding that the money to pay them was to be made out of the bawdy house business.

Appellant testified in part: "That Mr. Jones and she talked it over, and it was their idea that if she bought these attractive goods it would make business better and she would be able to pay for them; that plaintiff depended on her making the money in that way; that there was no other consideration for the mortgage;" that appellee "put the furniture down in her house." Appellant testified on cross examination that she never made any agreement with appellee to give it any interest in her business.

On behalf of appellee the evidence tended to show that appellee never had anything to do with, or any interest in the bawdy house business, that it merely sold appellant the goods, knowing at the time of the sale, and at the time the notes and mortgage were executed, that the goods were bought by appellee to be used, and that same were used, by her in the house which she occupied and used for a bawdy house.

*C. V. Teague,* for appellant.

1. If the original contract was illegal, the notes and mort-gage are void.   9. Cyc. 562-3; 36 S. W. 99; 3 Barn. & Ald. 179-185.

2. The original contract was illegal.  Where a vendor sells goods, knowing the goods are to be used in violation of law. no recovery can be had.  This has been held by all the courts, unless 85 Ark. 9 has expressed a contrary view.   15 A. & E. Enc. L. (2 ed.) 963, 987; 25 Ark. 209; 27 Am. Dec. 266; 51 L. R. A. 889; 76 Am. Dec. 154; 48 Ark. 487; 36 S. W. 99; 34 Tex. 246; 36 Ia. 555; 4 Dana (Ky.) 381; 33 Mich. 469; 3 Mo. App. 468; 32 Vt. 110; 97 N. W. 693; 10 L. R. A. 439; L. R. 1 Exch. 212; 20 Ga. 449; 22 La. Ann. 54; 4 Burr. 2069.

*Jones & Hamiter,* for appellee.

*Hollenberg Music Co.* v. *Berry,* 85 Ark. 9, is conclusive of this case.   11 Wheat. 258.

WOOD, J., (after stating the facts).   While appellee at the time it sold the furniture to appellant knew that she was keeping a bawdy house, and knew that she bought the furniture to use in the bawdy house, yet, according to the testimony of appellee, such use of it was not a part of the contract of sale and pur-chase.   Appellee had no interest in the business, but merely sold appellant the goods, so its manager testified, and the chan-cellor accepted his testimony as the truth.   It can not be said that the use of the goods by appellant was inseparable from the business in which she was then engaged.   Appellant might have changed her business from bawdy house to boarding house, and the furnishings could have been used in the latter as well as the former.   The furnishings were not such as could be used only in the bawdy house business, and therefore they were not "inseparable" from the bawdy house business.   Nor can it be said by the terms of the contract, as appellee states it. that appellee was knowingly to derive some benefit from the use of the furnishings in the bawdy house.

Jones, the manager of appellee, says it had no interest in her business, and appellant in her cross examination corrobo-rated Jones by saying that she "never made any particular agree-ment with him to give him any interest in the business."

The findings of the chancellor are not clearly against the

preponderance of the evidence. We are unable to distinguish the case in principle from *Hollenberg Music Co.* v. *Berry,* 85 Ark. 9, where the law of such cases is stated. See authorities there cited.

The judgment is affirmed.