## ASHFORD *v*. MACE.

### Opinion delivered March 11, 1912.

1. LANDLORD AND TENANT—CONTRACT—ILLEGALITY.—A lease contract is not void because the lessor knows that the lessee intends to use the leased premises for a bawdy house unless the intention of the lessee that the premises shall be used for such illegal purpose is participated in by the lessor.   (Page 115.)

2. CONTRACT—CONNECTION WITH ILLEGAL TRANSACTION—A contract] will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case. (Page 119.)

Appeal from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

*Greaves & Martin,* for appellants.

1.   The court erred in proceeding upon the theory that the knowledge or intention of the lessor at the time of making the lease would not affect the legality of the contract, and in holding that it was not a proper issue in the case unless an intention appeared from the contract that the lessor was to receive a benefit therefrom.

The principle applies, even in States where it is ruled that recovery may be had for sales of personalty for immoral purposes, that where real property is leased with knowledge that it is to be used for immoral purposes, a recovery can not be had on the contract, on the theory that the knowledge of the lessor of the intended use implies consent to that use, and thus implicates him in the design.   106 Mass. 537; 122 Mass. 231; 179 Mass. 53; Benjamin on Contracts, (2 ed.), 280; 2 Taylor, Landlord & Tenant, §§ 521, 644; 18 Am. & Eng. Enc. of L. 316; 4 Daly (N. Y.) 467; 140 N. Y. 364; 62 N. H. 596; 16 Col. 289; 104 Mo. 349; 62 Ill. App. 134; 114 Cal. 91; 71 Vt. 253; 20 Ga. 449; 22 La. Ann. 54; 4 Tex. Cr. App. 459; 117 Am. St. Rep. 509-511, note to *State* v. *Wilson.*

2. At the common law, which, under Kirby's Dig., § § 623-624 controls here in the absence of a special statute on the subject, one who kept a bawdy house or brothel was·guilty of a misdemeanor. The act of running such a house is indictable, therefore, in this State as a misdemeanor. The lessor of premises with knowledge that they are to be used for such purposes is indictable as a principal. Appellee can not recover for that reason also. 38 Ark. 637; 94 Ark. 207; 20 Mass. 26; 16 Col. 289; Benjamin on Contracts, (2 ed.), 248; 29 Ark. 386; 47 Ark. 378.

*Rector & Sawyer,* for appellee.

1. Mere knowledge of a lessor of the intention of a lessee to sublet the leased premises to a subtenant for the purpose of running a bawdy house is not sufficient to make void the contract. 85 Ark. 11; 94 Ark. 99.

2. Whether or not at the common law knowingly letting a house to a person intending to run a bawdy house is a misdemeanor need not be determined in the decision of this case. See 32 Am. St. Rep. 456, notes to *Graves* v. *Johnson;* 9 Cyc. 571.

3. A mere avowal by the lessee of an intent to use the leased premises for an immoral purpose would not justify the lessor in repudiating his contract. 8 Am. Rep. 140, note; 49 Mo. 474; 13 R. I. 350.

WOOD, J. The question presented by this appeal is whether or not mere knowledge on the part of a lessor that his lessee intended to sublet the premises leased for the purpose of running a bawdy house would render the contract or lease void.

In the case of *O'Bryan* v. *Fitzpatrick,* 48 Ark. 487, liquor was sold with knowledge on the part of the seller that the liqour would be resold in violation of the law, and under circumstances which showed that the seller intended that it should be resold. This court, speaking through Judge COCK-RILL, said:

"Mere knowledge by the vendor that liquor is to be resold in violation of the statute, without a participation in the illegal act, will not vitiate the sales he may make to the intended dealers; but if the vendor designedly contributes to the scheme,

or is to derive a benefit from it, or if there is a unity of purpose between him and the party to be supplied, he is infected with the latter's criminality, and the contract is void."

In *Anheuser-Busch Brewing Association* v. *Mason*, 9 L. R. A. 506, the court, after referring to the cases of *Tracy* v. *Talmage*, 14 N. Y. 162, and *Hill* v. *Spear*, 50 N. H. 253, said:

"These cases, now regarded as leading on this side of the Atlantic, announce the rule to be that mere knowledge by a vendor of the unlawful intent of a vendee will not bar a recovery upon a contract of sale; yet if in any way the former aids the latter in his unlawful design to violate a law, such participation will prevent him from maintaining an action to recover. The participation must be active to some extent. The vendor must do something in furtherance of the purchaser's design, but positive acts in aid of the unlawful purpose are sufficient, though slight."

Continuing, the court said: "While it is certain that a contract is void when it is illegal or immoral, it is equally as certain that it is not void simply because there is something immoral or illegal in its surroundings or connections. It can not be declared void merely because it tends to promote illegal or immoral purposes. The American text writers generally admit this to be the prevailing rule of law in the States upon this point."

There is an exception to the rule in cases where the seller knows that the commodity sold is intended to be used by the buyer "in flagrant violation of the fundamental rights of man or of society as in cases of murder, treason or other heinous felonies that are *malum in se*." See *Steele* v. *Curle*, 4 Dana 381; *Anheuser-Busch Brewing Association* v. *Mason, supra; Hanauer* v. *Doane*, 12 Wall. 342; *Milner* v. *Patton*, 49 Ala. 423; *Bickel* v. *Sheets*, 24 Ind. 1.

In the cases of *Tatum* v. *Kelley*, 25 Ark. 209, *Ruddell* v. *Landers*, 25 Ark. 238, and *McMurtry* v. *Ramsey*, 25 Ark. 349, the court held that the payee in a note given for the purchase of articles to be used in the war between the States, who knew at the time the articles were to be used in aid of the Confederate States, could not recover. These decisions were based upon the ground that the buyer was engaged in rebellion, which was treason against the government, and that therefore the seller,

knowing of these facts, concurred with and actively promoted the treasonable purpose of the buyer. From the viewpoint of the judges who then constituted the court and who participated in and rendered these opinions, it was treason against the government to sell articles to be used by the Confederate army. Hence those cases came within the exception to the general rule. But in the later cases this court, while citing these decisions in 25th Arkansas, nevertheless refused to follow them in cases similar to the one under consideration.

While the keeping of bawdy houses, on account of its corrupting influence upon public morals and its detrimental effects upon society, has been denounced in the jurisprudence of civilized nations as a common nuisance, a flagrant misdemeanor, nevertheless it has not heretofore been classified by lawmakers and law writers among the heinous felonies, such as treason, murder, rape, etc. 3 Coke, Inst. 205; 1 Bish. Cr. Law, 1083-3; 1 Russell on Crimes, 299; 4 Blk. Com. 1671; *Rex* v. *Higginson*, 2 Burrow 1232; 1 Wharton, Cr. Law, § 1449. Hence it is within the rule, and not the exception mentioned above.

In the case of *Hollenberg Music Co.* v. *Berry*, 85 Ark. 11, where the seller knew that it was the intention of the buyer to use the article purchased in a house of prostitution, this court cited all the former cases, but followed the rule announced by Chief Justice COCKRILL in *O'Bryan* v. *Fitzpatrick, supra,* and said:

"The rule supported by the weight of authority and approved by this court is that, though the contract is entered into by one of the parties for the furtherance of an illegal purpose, the contract will not be rendered illegal as to the other party, though he had knowledge of such illegal purpose, provided he does nothing in furtherance thereof."

Again in *Belmont* v. *Jones House Furnishing Company*, 94 Ark. 96, the same rule is recognized and adhered to.

The instant case can not be distinguished in reason and principle from the latter cases. The lower court, in its admission and exclusion of evidence, and in the giving and refusing of prayers for instructions, followed the rule announced by this court in *Belmont* v. *Jones House Furnishing Co.* and *Hollenberg Music Co.* v. *Berry, supra.* We believe that the

rule announced in these cases is in accord with the weight of authority in this country, though we are free to confess that there is a great conflict in the adjudicated cases.

In 9 Cyc., p. 571, it is said: "In the United States, while some courts have followed the English rule, most of the courts have taken a different view, and have held that the mere knowledge of the seller of goods or services, or of the vendor or lessor of property, that the buyer intends an illegal use of them is no defense to an action for the price or for rent."

From such research as we have been able to give, we are of the opinion that this is a correct statement. See *Ralston v. Roady*, 20 Ga. 449; *Michael* v. *Bacon*, 49 Mo. 474; *Alma* v. *Greene*, 13 R. I. 350.

One of the most exhaustive and thoroughly considered cases in this country is that of *Hill* v. *Spear*, 50 N. H. 253, where the authorities in the opinion and in the dissenting opinion are extensively reviewed. In that case the court said:

"We are bound to look at the contract alone. Quite unimportant are subsequent transactions growing out of it. The contract was ended when Stewart delivered the goods, and subsequent dealings with the property by Emmerson and others, either in furtherance of or contrary to the original design of the purchaser, can not relate back to the original sale and make that illegal which at the conclusion of the original contract was not illegal."

So here the contract of lease was complete when the parties agreed upon the price to be paid, the time the premises were to be occupied, and when possession thereof was taken under the contract. Although the lessor may have had knowledge that the premises would be used for an immoral purpose, unless, coupled with that knowledge, there was an intention on his part when he executed the lease that the premises should be used for such immoral purpose, the lease contract would not be void. Unless there was a common intent on the part of the lessor and the lessee at the time the contract was made that the leased premises should be used for the unlawful purpose indicated, the contract would not be against public policy and void. The lessor is not the keeper of the conscience of the lessee, and has no police control over him in such mat-

ters, and mere knowledge on the lessor's part that the lessee is going to use the premises for an unlawful purpose does not make the lessor a participant in that purpose; for mere knowledge that the lessee may or will use the premises for an unlawful purpose is not of itself sufficient to show that the lessor intended that they must or shall be so used. The lessee might change his mind and use the leased premises for a lawful purpose. If he did not do so, but proceeded to put the premises to an unlawful use, then the lessor might sue in equity to restrain the unlawful use, but he could not forfeit the lease. See 18 A. & E. Enc. L. 379. The lease contract is good unless, as stated, the intention of both parties in making it is that the premises shall be used for the unlawful purpose.

In the case of *Armstrong* v. *American Exchange Bank,* 133 U. S. 469, the court say:

"An obligation will be enforced, although indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case." Citing a number of authorities.

The appellee did not require the aid of the illegal use of the property to enable him to recover on the lease contract. The consideration for that was independent of the illegal use to which the premises were afterwards devoted. See *Armstrong* v. *American Exchange Bank, supra.*

The judgment is affirmed.

HART and KIRBY, JJ., dissenting.