(No. 12702.—Judgment affirmed.)
ALBERT HOEFELD *et al.* Defendants in Error, *vs.* JAMES OZELLO, Plaintiff in Error.

*Opinion filed October 27, 1919—Rehearing denied Dec. 4, 1919.*

1. CONTRACTS—*mere knowledge of seller that buyer intends to violate law will not render a contract void.* A contract to do an illegal thing cannot be enforced, but the mere knowledge of the seller that the buyer intends an unlawful use of the property sold will not render the contract void as between the parties.

2. SAME—*illegal contracts are void for the public good and not for the defendant's advantage.* The public good, and not the defendant's advantage, is the controlling consideration in the application of the rule that a contract to do an illegal thing cannot be enforced.

3. LEASES—*what clause in a lease does not render it an illegal contract.* In a lease of premises to be used as a restaurant and saloon in the city of Chicago, a clause giving the lessee the right to terminate the lease within a certain time "in the event that the State Sunday-closing law is generally enforced" in the city is not a provision sanctioning a violation of the law but merely states a condition under which the lease may be terminated.

4. SAME—*oral testimony cannot vary plain terms of lease.* If the language of a lease is unambiguous, oral testimony cannot be heard to vary or add to its meaning.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding.

THOMAS W. PRINDEVILLE, and THOMAS J. O'HARE, for plaintiff in error.

ADLER, LEDERER & BECK, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the municipal court of Chicago by defendants in error against plaintiff in error for rent under a written lease for premises to be used as a restaurant and saloon. The judgment was entered by confession and afterwards opened up on motion of plaintiff in error, and he was permitted to defend. On trial before the court there was found to be due under said lease, for rent, $1430, and a judgment was entered for that amount. On appeal to the Appellate Court the judgment of the trial court was affirmed, and the cause has been brought here on petition for *certiorari.*

The lease contains the following provision: "The lessee hereby covenants and agrees that during the term of the lease the business carried on in said demised premises shall be conducted in accordance with the laws of the State of Illinois and the ordinances of the city of Chicago." It also contains the following option to terminate the lease by the lessee: "The lessee shall have the right to terminate this lease on April 30, 1918, by giving to the lessors, prior to January 1, 1918, a written notice of his intention to terminate. * * * The lessee shall have the right to terminate this lease by giving to the lessors, within thirty days after the closing of said saloon by State or city authorities, a sixty days' written notice in the event that the State Sunday-closing law is generally enforced in Chicago or in

the event that the city of Chicago shall discontinue the issuance of all saloon licenses."

The sole question involved in this proceeding is whether the provision or clause with reference to terminating the lease if the State Sunday-closing law is enforced in Chicago renders the whole lease void. It is vigorously argued by counsel for plaintiff in error that this clause, if not directly at least inferentially, contemplates the violation of the State law against opening saloons on Sunday; that this optional provision indicated an intention to conduct a saloon in violation of the law. It was sought in the court below to fortify this position with proof that prior to the leasing plaintiff in error informed defendants in error, or their agent, of his intention to keep his place open on Sunday. There is nothing in the lease that supports this argument. There is no requirement in the lease, expressed or implied, to operate a saloon on Sunday. The only provision referring to the manner of doing business is that which requires plaintiff in error to conduct his business in accordance with the laws of the State and city. Plaintiff in error was not subject to the orders of defendants in error as to when he should open or when he should close, or what days he should operate, or in any other way as to his method of doing business, except that he should do it in a lawful manner.

We agree fully with the argument of counsel for plaintiff in error that the courts will not aid in the enforcement of a contract entered into with the intention of carrying out anything prohibited by law. The authorities here and in other jurisdictions are to the effect that a contract to do an illegal thing cannot be enforced, such as, for instance, driving at excessive speed in violation of a municipal ordinance, as was held in *Nash* v. *Monheimer,* 20 Ill. 215; or to lease a house for immoral purposes, as in *Fields* v. *Brown,* 188 Ill. 111. But the weight of authority, in this country at least, is to the effect that the mere knowledge of the seller that the buyer intends an unlawful use

of the goods sold will not void the contract between the parties. (*Ashford* v. *Mace,* 103 Ark. 114; *Bluthenthal* v. *McWhorter,* 131 Ala. 642; *Allen* v. *Keilly,* 18 R. I. 197.) In *Ashford* v. *Mace, supra,* the court stated: "In 9 Cyc. p. 571, it is said: 'In the United States, while some courts have taken the English rule, most of the courts have taken a different view, and have held that the mere knowledge of the seller of goods or services or of the vendor or lessor of property that the buyer intends an illegal use of them is no defense to an action for the price or for rent.' * * * Here the contract of lease was complete when the parties agreed upon the price to be paid, the time the premises were to be occupied and when possession thereof was taken under the contract. Although the lessor may have had knowledge that the premises would be used for an immoral purpose, unless, coupled with that knowledge, there was an intention on his part when he executed the lease that the premises should be used for such immoral purpose the lease contract would not be void. * * * The lessor is not the keeper of the conscience of the lessee and has no police control over him in such matters, and mere knowledge on the lessor's part that the lessee is going to use the premises for an unlawful purpose does not make the lessor a participant in that purpose; for mere knowledge that the lessee may or will use the premises for an unlawful purpose is not, of itself, sufficient to show that the lessor intended that they must or shall be so used."

In *Almy* v. *Greene,* 13 R. I. 350, the court said (p. 352): "The decision of the court is that knowledge on the part of the lessor, before and at the time of the execution of the lease, that the lessee intended to use the demised premises in violation of the statute was not sufficient to render the lease void, in the absence of any other participation in or furtherance of the illegal purpose by the lessor."

"Mere knowledge on the part of A, in the case supposed, that B is purchasing the liquors for the purpose of

selling them in territory where the sale of such liquors is prohibited by law, coupled with the sale of them by B in such territory, will not suffice to render the transaction between A and B illegal. In addition there must be some participation by A in the illegal purpose and act of B, and while knowledge of such purpose, coupled with its execution on the part of B; may afford a basis for inference of participation on A's part,—*i. e.*, would be evidence tending to show such participation,—such knowledge of the proposed illegal act is not, of itself, that participation in it which will avoid B's liability to pay A for the liquors." *Bluthenthal* v. *McWhorter, supra.*

In *Lurton* v. *Gilliam*, 1 Scam. 577, there was an action to recover for cloth sold, based on an election bet. The court said (p. 579) : "It does not appear that the defendants in error were in any way parties to the bet or encouraged it, and we do not perceive that their contract for the sale and delivery of the cloth was tainted with a participation in the original agreement between the parties. Their mere knowledge of it could not certainly connect them with it, and having parted with their property under the arrangement, common honesty surely requires that the party at whose instance it was delivered, conformably to his agreement, should be held answerable for the value of the merchandise delivered."

It is argued earnestly that the defendants in error fully intended that plaintiff in error should violate the law by keeping his saloon open on Sunday and that therefore the contract was void. In a somewhat recent decision this court said : "It is urged that this contract is void chiefly for the reason that it furnished an incentive to appellant to shorten the life of Mrs. McVicker by neglect or improper treatment or by the commission of the crime of murder. Each argument made by appellees in support of this contention involves a breach of the contract and is not founded on

the performance of it." (*Zeigler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.) The reasoning found in this quotation fully answers the argument of counsel for plaintiff in error here as to defendants in error encouraging plaintiff in error to violate the contract. So far as this record shows, the only trace of illegality is furnished, not in the making of his lease,—plaintiff in error contracted to do nothing illegal,—but in his conduct in carrying on the business engaged in by him in the demised premises in violation of said Sunday-closing law. In his affidavit filed in the lower court in support of his position he does not state that he informed defendants in error that he would necessarily operate on Sunday but that he would do so "if permitted by the police authorities." This court said in *Zeigler* v. *Illinois Trust and Savings Bank, supra,* on page 193: "The laws and the public policy of the State permit and require the utmost freedom of contracting between competent parties, and it is only when a contract expressly contravenes the law or the known public policy of the State that courts will hold it void." In considering a somewhat similar question the court of appeals of New York held: "A lease valid, as this was, upon its face, is not to be condemned as unlawful, and therefore an unenforceable instrument, because the purpose for which the demised premises were to be used might under certain circumstances be within the prohibition of a statute. When the operation of the prohibition depends upon the proof, and that is inconclusive upon the subject, then the obligation of the parties remains unaffected. The presumption of a lawful intention must always prevail, and the burden of overthrowing it is not met by him who asserts it by proof which is quite consistent with a perfectly lawful purpose, however demonstrating that if effectuated in a certain way it would contravene the law." (*Shedlinsky* v. *Budweiser Brewing Co.* 163 N. Y. 437.) This reasoning applies to the situation here. This lease, in our judgment, was not shown to have been entered

into with the intention of using the premises for an un-lawful purpose.

In *Kearney* v. *Webb*, 278 Ill. 17, this court held that a plaintiff's action could not be defeated by a claim of illegality injected into the case by a defendant. In that case money had been delivered to three persons in pursuance of an illegal contract, under directions to use it for gaming purposes, and it was held that the owner might recover in an action for money had and received if he repudiated the contract before the money was paid over according to the illegal agreement, the court saying (p. 23) : "They proved their title to the money without relying on the illegal contract in question,—*i. e.*, they made out completely under their declaration, without even a reference to the illegal contract, their *prima facie* case. They used two of their said employees as their witnesses, and there is no claim to the money in question by anyone except the plaintiffs in error. It was the defendant in error himself who introduced the proof of the illegal contract and relied thereon for his defense. He cannot be permitted to rely on the illegal contract for a defense."

Under the authorities cited we cannot infer from the clause in the lease here in dispute that defendants in error licensed plaintiff in error to violate the Sunday-closing law. No decision cited by counsel for plaintiff in error, in our judgment, goes to the length of holding that a covenant of this nature is susceptible of being inferred as a license to violate the law. We do not so construe this clause. It is not a provision for the violation of the law but states a condition which gave plaintiff in error the option of terminating the lease. If plaintiff in error desired to avail himself of this option he could have done so by giving notice as provided by the lease. Having failed to do so he can not now take advantage of this defense. The public good, and not the defendant's advantage, is the controlling consideration. (*Hill* v. *Spear*, 50 N. H. 253.) As was said

by Lord Mansfield in *Holman* v. *Johnson*, Cowper, 341: "The objection that a contract is immoral or illegal as between the plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff."

It is further insisted by counsel for plaintiff in error that the trial court erred in refusing to permit evidence offered that at and prior to the execution of the lease conversations were had between the plaintiff in error and the agent of defendants in error with reference to the lease being made with the understanding that the Sunday-closing law was to be violated. We do not think that plaintiff in error established, in a proper way, the authority of defendants in error's agent to make the changes or enter into any agreement not contained in the written lease. Furthermore, the offered testimony tended to vary or add to the plain terms of the lease between the parties. "If the language [of an instrument] is plain and unambiguous, proof *aliunde* cannot be heard to contradict or vary its meaning or give it a meaning inconsistent with the language used in the instrument." (*Chicago Auditorium Ass'n* v. *Fine Arts Building*, 244 Ill. 532.) The instrument itself constitutes the contract of the parties. *Gaston* v. *Gordon*, 208 Mass. 265.

While it is undoubtedly true that a contract made for the purpose of violating a State statute must be held void and unenforceable, there is no provision in this lease which showed that a State statute was intended to be violated. On the contrary, the lease specifically provides that the demised premises shall be conducted in compliance with the State and local laws.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*