### UNITED STATES v. HARRISON.

#### No. 7498.

Circuit Court of Appeals, Third Circuit.

June 24, 1941.

---

Nathan H. Brodsky, of Newark, N. J., for appellant.

Irwin L. Langbein, of Washington, D. C. (William F. Smith, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, CLARK, and JONES, Circuit Judges.

CLARK, Circuit Judge.

The appellant, a dealer in sugar in New York City, was convicted of conspiracy to defraud the revenue through the operation of an unregistered and so untaxed still.[1] The facts are not in dispute and may be summarized in this fashion. A still located on a farm in Atlantic County, New Jersey, was raided on October 26, 1937. In and around it were found many empty sugar bags and five-gallon cans. On October 23, 1937 the defendant Harrison had filled his truck with 125 bags of sugar and 200 empty five-gallon cans. He ordered his driver, one Ferdinand DeRosa, a co-conspirator who plead guilty, to take the truck to the Villa Roma Hotel in Atlantic City. He told the latter that there he would meet a man who would direct him to the spot where the truck would be unloaded. The load was consigned to the Boulevard Storage Warehouse Company in Atlantic City and a bill of lading[2] to that effect was furnished to the driver. He was instructed to show the bill if he was stopped along the road. At the Hotel in Atlantic City the driver met the guide, one Rizzo, another co-conspirator who plead guilty. At the latter's command, he parked his truck at a gasoline station overnight. The next morning he was told to move the truck to a parking lot 3 or 4 blocks away and after doing so reported fully to the defendant Harrison. At midnight that night DeRosa and Rizzo departed on the truck in the general direction of what afterwards proved to be the still site. Ten or fifteen miles from Atlantic City, a Ford or Chevrolet "tail" car joined the convoy. Twenty miles from Atlantic City the driver of this car warned the guide Rizzo that they were being followed. The truck was thereupon turned around and driven back to Atlantic City. It was parked at 4 o'clock in the morning in a vacant lot near the Boulevard Warehouse. At 9 o'clock DeRosa left his bed at the Hotel and went back to pick up his truck. It was gone. He immediately telephoned the appellant Harrison and was told to return to New York. The next day the latter informed him that the truck had been seized by the Federal agents and that he, DeRosa, was to be questioned by the agents. He was told to maintain to them that he was to take the load to the Boulevard Warehouse in Atlantic City. Thereafter he left the defendant's employ and saw him only once again when arrangements were made for him to be taken by the defendant to the trial in Camden. The sale of the sugar was unreported despite the requirements of the regulations of the Bureau of Internal Revenue.[3]

■ The principal ground of his appeal is a claim for the benefit of a recent decision of the United States Supreme Court.[4] He contends that it compels a direction in his favor. He seeks the advantage of certain language[5] in the opinion of the Circuit Court of Appeals for the Second Circuit in the same case. That language was, in fact, clarified by a later decision of the same court.[6] Even if it had not been so explained, we need only give heed to the highest court. Mr. Justice Stone phrases the decision in the last few lines of its opinion. He says: " * * * one who *without more* furnishes supplies to an illicit distiller is not guilty of conspiracy even though his sale may have furthered the object of a conspiracy to which the distiller was a party but of which the supplier had *no knowledge*. On this record we have no occasion to decide any other question." United States v. Falcone, 311 U.S. 205, 210, 211, 61 S.Ct. 204, 207, 85 L.Ed. 128 (italics ours).

■ This is at most a declaration that the Supreme Court sides with the numerical minority on a question much agitated in the United States Courts during the prohibition era.[7] That question is the legal posi-

---

[1] 18 U.S.C.A. § 88; 26 U.S.C.A. Int. Rev.Code, § 2810.

[2] Exhibit G49.

[3] Regulations No. 17 (as amended April, 1937), 26 U.S.C.A. Int.Rev.Code, § 2811.

[4] United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128.

[5] " * * * [a co-conspirator] must in some sense promote their venture himself, make it his own, have a stake in' its outcome." United States v. Falcone, 2 Cir., 109 F.2d 579, 581.

[6] " * * * That case [Falcone] held that sales of sugar, not illegal in themselves, did not alone show participation of the sellers in a conspiracy of this form, even if the sellers had knowledge that the sugar might be used for an illegal purpose." United States v. Pandolfi, 2 Cir., 110 F.2d 736.

[7] The minority: Di Bonaventura v. United States, 4 Cir., 15 F.2d 494; United States v. Russell, D.C., 41 F.2d 852; Young v. United States, 5 Cir., 48 F.2d 26; United States v. Peoni, 2 Cir.,

tion vis a vis a conspiracy of a seller who knows that the goods he supplies are destined for an illegal use; or in other words, of a "wise" owner of innocent goods which contribute to the operation of an illegal distillery. We can start with the assumption that an intention to become a party to an illegal enterprise must be predicated on some affirmative action. That is the consensus of both the minority and majority views.[8] The sale of goods surely constitutes affirmative action. The problem has arisen in the civil as distinguished from the criminal law. There we find the earlier cases holding that no principle of law compels a seller to take cognizance of the morals of his customers.[9] Later the civil judges displayed a tendency opposite to that of their brethren on the criminal side. They stiffened the rule and made participation turn upon the magnitude of the buyer's wrongful purpose and so upon the nature of the crime.[10] It may be that the same compromise will ultimately be the rule of the Supreme Court. A writer in the Iowa Law Review has clearly set forth the conflicting considerations: "A choice between these two doctrines depends upon an evaluation of how each best protects the social, individual, and commercial interests involved. On the one hand, freedom of enterprise would be curbed if sellers were forced to select their purchasers with care in order to prevent becoming involved in their plans and conduct. Also, sellers should be protected from prosecutors who seek to prosecute as co-conspirators all those who have been associated in any degree whatever with the main offenders. On the other hand, perhaps the seller should be regarded as a co-conspirator, since his association with the conspiracy actually goes beyond a sympathetic attitude or acquiescence; his contribution is physical and essential to their success. It would seem that the social interest invaded by such active assistance should be protected. Furthermore, it will be difficult to secure convictions of sellers who are actually co-conspirators if this cannot be done by showing that they sold goods with knowledge of the illegal nature of the enterprise utilizing them, since it is usually hard to prove any further participation by the sellers." Conspiracy-Conviction of One Selling Innocent Goods to Conspirators With Knowledge of Their Illegal Use, 26 Iowa Law Review 122, 125 (note).[11]

---

100 F.2d 401, noted in Application of Conspiracy Statute to Prosecution For Sale of Counterfeit Money, 48 Yale Law Journal 1447; United States v. Falcone, 2 Cir., 109 F.2d 579 above cited.

The majority: Rudner v. United States, 6 Cir., 281 F. 516, certiorari denied, 260 U.S. 734, 43 S.Ct. 95, 67 L. Ed. 487; Simpson v. United States, 4 Cir., 11 F.2d 591; Pattis v. United States, 9 Cir., 17 F.2d 562, noted in Criminal Law—Conspiracy—One Who Knowingly Assists Others to Accomplish Object of A Conspiracy Is Co-conspirator, 12 Minnesota Law Review 77; Zito v. United States, 7 Cir., 64 F.2d 772; Borgia v. United States, 9 Cir., 78 F.2d 550; Marino v. United States, 9 Cir., 91 F.2d 691, 113 A.L.R. 975; Backun v. United States, 4 Cir., 112 F. 2d 635.

[8] See footnote 7 above; United States v. Lancaster, C.C., 44 F. 896, 10 L.R.A. 333; Laska v. United States, 10 Cir., 82 F.2d 672; United States v. Dellaro, 2 Cir., 99 F.2d 781; People v. Bain, 359 Ill. 455, 195 N.E. 42; State v. Dreany, 65 Kan. 292, 169 P. 182; Solomon v. State, 168 Tenn. 180, 76 S.W.2d 331; Levering v. Commonwealth, 132 Ky. 666, 117 S.W. 253, 136 Am.St.Rep. 192, 19 Ann.Cas. 140; cf. Luteran v. United States, 8 Cir., 93 F.2d 395 (a different result obtains when action is a duty).

[9] Kreiss v. Seligman, 8 Barb., N.Y., 439; Tracy v. Talmage, 14 N.Y. 162, 67 Am.Dec. 132; Jacobs v. Danciger, 328 Mo. 458, 41 S.W.2d 389, 77 A.L.R. 1237; Holman v. Johnson, 1 Cowp. 341 (K.B. 1775); Hodgson v. Temple, 5 Taunt. 181 (C.P. 1813); 2 Page, Contracts, 2d Ed., § 1108; contra: Langton v. Hughes, 1 M. & S. 593 (K.B. 1813).

[10] Distinction between heinous crimes and conduct which is malum prohibitum: Hanauer v. Doane, 12 Wall. 342, 79 U.S. 342, 20 L.Ed. 439; Roquemore v. Alloway, 33 Tex. 461; Lightfoot v. Tenant, 1 Bos. & P. 551 (C.P. 1796). Distinction between greater and lesser crimes: Bowery v. Bennett, 1 Camp. 348 (N.P. 1808). Distinction between felonies and misdemeanors: Ashford v. Mace, 103 Ark. 114, 146 S.W. 474, 39 L.R.A.,N.S., 1104, Ann. Cas. 1914B, 804. No hard and fast line can be drawn: Bickel v. Sheets, 24 Ind. 1; Steele v. Curle, 4 Dana 381, 34 Ky. 381; Graves v. Johnson, 179 Mass. 53, 60 N.E. 383, 88 Am.St.Rep. 355.

[11] Another writer expands one side of the problem as applied to particular crimes, including that of the case at bar: "The ruling in the principal case promises to retard efforts to prosecute illegal organ-

It happens that in the case at bar the proof of "further participation" is easy rather than "hard". As the evidence discloses, the container for sugar is a bag and for alcohol is a can. The transaction was not reported to the proper authorities. The defendant used a fictitious consignee. He used a false bill of lading. He furnished a guide, a functionary not usually necessary on the peaceful roads of South Jersey. Finally he instructed an employee to attempt the deception of the government agents. Thus we find the defendant responsible for six affirmative acts other than the sale of his sugar. We think this fully proves participation even under the rather strict doctrine laid down by the Supreme Court.

The appellant urges two other points. He asserts that the trial judge erred in admitting the following line of questioning, in that requiring the defendant to answer was contrary to his privilege against self-incrimination.

"Q. Mr. Harrison, during this same time you were familiar with the regulations of the Bureau of Internal Revenue requiring that you report the sale of sugar, were you not? A. Yes.

"Q. But you refused to make reports of the sale of your sugar during that time, didn't you? A. Appendix to Appellant's brief, p. 129. Yes, I did. I claim it is unconstitutional, even now."

The appellant here waived his privilege by taking the stand in his own defense.[12] Cross-examination as to another crime was admissible, if relevant.[13] Obviously, this evidence was relevant, since it concerned an overt act from which participation in the common design might be inferred.[14]

Finally, the appellant protests the admission by the truck driver concerning the "tail" car and the warning given by its occupants that the truck was being followed. The trial judge's remark that "I think the jury is entitled to infer that they were co-conspirators from their actions" is claimed to be prejudicial. Like the evidence of the failure to report the sugar sale, the testimony about the "tail" car was circumstantial evidence of the common design. That these unknown parties were co-conspirators might of course be inferred from the circumstances and did not have to be directly proved.[15] Unknown conspirators may be indicted along with named conspirators.[16] The acts of any co-conspirator are admissible against all even when the actors are not indicted,[17] and even though the accused was not present.[18]

The judgment of the district court is affirmed.

---

izations engaged in the distribution of such contraband goods as narcotics, obscene pictures, *illicit liquor*, and counterfeit money. The essential qualities of these groups are mass production and mass distribution, with each member knowing as few of the others as possible in order to avoid apprehension. It is the chief concern of the power behind the organization that no member except himself be familiar with the entire scope of the plan. Only by prosecuting all the members together and by culling the sum total of their knowledge is it possible to obtain a detailed mosaic of the whole undertaking." Application of Conspiracy Statute to Prosecution For Sale of Counterfeit Money, 48 Yale Law Journal 1447, 1450 (note) (italics ours).

[12] "If the accused once takes the stand, the fiction of waiver generally operates to leave him completely bereft of the option of refusal to answer incriminating questions so long as they are otherwise admissible." The Privilege Against Self-Incrimination, 49 Yale Law Journal 1059, 1060 (comment).

[13] Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; United States v. Nettl, 3 Cir., 121 F.2d 927, filed June 23, 1941.

[14] "The common design is the essence of the crime, and this may be made to appear when the parties steadily pursue the same object, whether acting separately or together, by common or different means, but ever leading to the same unlawful result." Allen v. United States, 7 Cir., 4 F.2d 688, 691. Cf. Safarik v. United States, 8 Cir., 62 F.2d 892; Marx v. United States, 8 Cir., 86 F.2d 245; Blumenthal v. United States, 8 Cir., 88 F. 2d 522.

[15] 2 Wharton Criminal Law § 1667; 1 Brill, Cyclopedia of Criminal Law § 483, footnote 7.

[16] United States v. Hamilton, 26 Fed. Cas. 90, No. 15,288; Pomerantz v. United States, 3 Cir., 51 F.2d 911; cf. Criminal Law—Conspiracy—Conviction of One Defendant, 16 St. Louis Law Review 330.

[17] 2 Starkie, Evidence, 2d Ed., 237; 2 Wharton, Criminal Evidence § 702.

[18] 2 Wharton, Criminal Evidence § 709.