MARRASH et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

No. 233.

1. CONSPIRACY (§ 47*)—CIRCUMSTANTIAL EVIDENCE—FORMAL AGREEMENT.

Conspiracy to defraud the United States, under section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676), is not necessarily established by direct evidence. Circumstantial evidence may suffice. A formal agreement need not be proved. It is sufficient to show that the parties are acting together understandingly to accomplish the same unlawful purpose, even though

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

168 F.—15

individual conspirators may do acts in furtherance of the common unlawful design, apart from and unknown to others.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

**2. CONSPIRACY (§ 48*)—QUESTION FOR JURY.**

The questions whether a conspiracy existed, as charged in an indictment, and whether an act was done by one or more of the defendants to effect the object of the conspiracy, are questions of fact for the jury.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 110; Dec. Dig. § 48.*]

**3. CRIMINAL LAW (§ 561*)—EVIDENCE—"REASONABLE DOUBT."**

The rule that, to warrant conviction for a crime, the evidence must in every case be of such a character as to exclude every reasonable hypothesis of innocence, is but another way of saying that the defendants must be proved guilty beyond a "reasonable doubt." If a reasonable doubt exists, there must be a reasonable hypothesis of innocence; and where such hypothesis does not exist there can be no reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1267; Dec. Dig. § 561.*

For other definitions, see Words and Phrases, vol. 7, pp. 5958–5972; vol. 8, p. 7779.]

**4. CRIMINAL LAW (§ 304*) — CONSPIRACY — CUSTOMS DUTIES—JUDICIAL NOTICE OF LAWS.**

In a prosecution for conspiracy to defraud the customs revenue, it is not requisite that proof should be given that the imports involved were dutiable, or were not within a provision exempting from duty goods of American origin. The court can take judicial knowledge of the laws of the United States and the fact that the imports were dutiable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 706; Dec. Dig. § 304.*]

**5. CRIMINAL LAW (§ 564*)—PROOF OF VENUE.**

Where conspirators had been doing business together in the judicial district in which they were tried prior to and at the time of the crime, and there was no evidence that they had been together outside of the district, the jury were justified in finding the conspiracy to have been in that district.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1277–1284; Dec. Dig. § 564.*]

**6. CONSPIRACY (§ 47*)—PARTICIPATION IN OFFENSE—EVIDENCE.**

Knowledge by an alleged co-conspirator that the other defendants were attempting to defraud is not sufficient to involve him in the conspiracy; nor is mere suspicion that he was a party to the conspiracy.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

On writ of error to review a judgment of conviction under an indictment charging the defendants with having conspired to defraud the United States of customs duties due on certain importations of laces. Selim Marrash was sentenced to imprisonment for 12 months and to pay a fine of $500, George Sara was sentenced to imprisonment for 3 months and to pay a fine of $500, and Habib Marrash was fined $500 and to stand committed until the fine was paid. Seventy-five errors are assigned by the defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ernest E. Baldwin, for plaintiffs in error.

Henry L. Stimson, U. S. Atty. (Goldthwaite H. Dorr, Asst. U. S. Atty., on the brief), for the United States.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The indictment charges that the defendants on and before October 9, 1906, in the Southern District of New York, did conspire with other persons unknown to defraud the United States of large sums of money, which the defendants should have paid on the importation at the port of New York of dutiable goods from foreign countries. The indictment alleges that the manner in which the said conspiracy was to be effected was in brief as follows:

The defendants were to cause said merchandise to be shipped to New York, consigned to the defendant Sara, or other persons unknown, upon false invoices containing false descriptions of the goods. The merchandise was to be falsely entered, as containing only crushed wheat, pistache nuts, etc., whereas in fact it contained laces and lace articles, the purpose being that these valuable articles should enter at the port of New York without paying duty. The indictment charges that the act done to effect the object of the conspiracy was as follows: On October 9, 1906, Sara caused to be entered at the port of New York, 12 cases of pistache nuts, crushed wheat, etc., and 10 bags of crushed wheat imported by him from Syria. That the entry was made upon two invoices, describing the merchandise as aforesaid, whereas in fact one of the bags contained 50 dozen handmade Syrian lace handkerchiefs, and one of the cases contained one can and another case contained two cans of lace and lace articles.

The indictment was based upon section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), which provides in substance that if two or more persons conspire to defraud the United States in any manner, and one or more of such parties do any act to effect the object of the conspiracy, all the parties thereto shall be liable to fine or imprisonment, or to both, in the discretion of the court. There can be no doubt as to the truth of the following propositions:

First. The October importations were made on false invoices, bills of lading, and entry, on none of which appeared any mention of the laces concealed in the crushed wheat and pistache nuts.

Second. The laces were so concealed that had the ordinary procedure in such cases been followed they might easily have escaped the observation of the custom officers.

Third. The disclosure that the importations contained concealed laces was not made until after Selim Marrash had been informed that, instead of the usual one package in ten, the entire importation had been ordered to the public stores for examination. Within an hour thereafter Selim had disclosed the presence of the contraband goods and had asked permission to amend the entry.

Fourth. The December and January entries of goods consigned to Petrakian and Marrash Bros., respectively, by the same importers at Damascus and Aleppo, were packed and started on their way before the discovery of the laces in the October entry was known to the ship-

pers. The December and January consignments had lace concealed in lentils, squash, and crushed wheat.

It cannot be denied that these facts were sufficient to cast suspicion strongly upon the defendants. One importation of nuts and wheat, with valuable laces carefully concealed therein and no suggestion of their presence on bills of lading, invoices, or entry, might have been made inadvertently and therefore with no criminal intent. When, however, five similar importations more or less directly connected with the defendants, shipped at different dates from exporters residing in cities separated from each other by several hundred miles of desert, arrive at the port of New York with the same contraband articles concealed in the same way, the presumption is persuasive that the consignees knew what goods they were receiving.

A letter discloses not only the character of the writer but also the character of the person to whom it is sent. A thief or a smuggler does not write to an honest man the details of his plans to steal and defraud. It is safe to assume that the recipient of such a letter is, if not a confederate, the same character of man as the writer. So, in the case before us, it is hardly conceivable, unless the exporters and importers were in accord, that so many packages of goods dishonestly packed and falsely billed would have been sent out. If the exporters had been honest, they would not have sent the goods under a false invoice and bill of lading. It is equally true that, if dishonest, they would not have sent the goods so packed and billed unless they knew the men with whom they were dealing.

Gellad at Aleppo and Debahi at Damascus knew that the moment the defendants discovered the hidden lace it would be their duty, on the assumption that they were not in the plot and were honest men, to denounce the fraud and sever all business relations. The importers, not the exporters, were to be benefited if the lace came in duty free, and it seems to us most improbable that the latter would have taken such a risk unless the situation was fully understood between them. In order words, the presumption is strong that both knew of the dishonest scheme and were acting in accordance therewith. The attempted explanation was discredited by the jury, and they were justified in disregarding it.

Selim Marrash testified that within an hour after he had been informed that the entire importation was to be sent to the public stores for examination, with a strong probability that the hidden lace would be discovered, he received a leter from Sara, mailed at Watertown, N. Y., October 6, 1906, which inclosed a letter from the exporters at Damascus, dated September 17, 1906, in which they say in substance that during their absence an employé took the liberty of sending bills of lading and a consular invoice from Beirut without disclosing the fact that the package of handkerchiefs and the two cans of needlework were concealed in the wheat and pistache nuts. How the employé of Debahi at Damascus succeeded in getting the handkerchiefs hidden in Gellad's crushed wheat at Aleppo, and how, in the absence of telepathic communication, he became familiar with the contents of Gellad's bill of lading from Alexandretta, is not ex-

plained. If Gellad were also afflicted with an incompetent or officious employé the letter does not disclose his identity. It would also appear that the employé who caused the trouble, or one equally negligent, was still in Debahi's employ on October 12th and 26th, for on these dates packages of lentils and squash were sent forward with lace concealed therein, no mention of the lace being made on the bill of lading.

We are convinced that the questions whether a conspiracy existed as charged in the indictment and whether an act was done by one or more of the defendants to effect the object of the conspiracy, were clearly questions of fact for the jury and that their verdict should not be set aside as against the weight of evidence.

It is argued that there was no direct evidence of conspiracy and the circumstantial evidence was insufficient to warrant a conviction. Under section 5440 it was necessary to prove that two or more of the defendants, Selim Marrash and George Sara, for instance, conspired to defraud the United States of duties lawfully due on imported laces, and that either Marrash or Sara did an act to carry it out. It is not necessary to establish the conspiracy by direct evidence. Conspirators do not go out upon the public highways and proclaim their purpose; their methods are devious, hidden, secret and clandestine. It is enough that they have a common purpose to defraud and that they act together for that purpose.

It is not necessary that a formal agreement be proved; it is sufficient if the testimony shows that the parties are acting together understandingly to accomplish the same unlawful purpose, even though individual conspirators may do acts in furtherance of the common unlawful design apart from and unknown to the others. It is manifest, therefore, that in many and, indeed, in most cases of conspiracy the corrupt agreement is proved by circumstantial evidence. Such evidence must, of course, satisfy the jury beyond a reasonable doubt, but in this respect there is no distinction between circumstantial and direct evidence.

Counsel for the defendants quotes from United States v. Richards (D. C.) 149 Fed. 443, 454, as follows:

"Circumstantial evidence, to warrant conviction, must be of such a character as to exclude every reasonable hypothesis but that of guilt of the offense imputed to the defendants."

But the same charge would have been laid down if the evidence had been direct. The evidence in every case must be of such a character as to exclude every reasonable hypothesis of innocence; and this is but another way of saying that the defendants must be proved guilty beyond a reasonable doubt. If a reasonable doubt exists there must be a reasonable hypothesis of innocence, and where such hypothesis does not exist there can be no reasonable doubt.

The testimony of the false invoices and bills of lading, not only in the instance charged in the indictment, but in other instances in which the defendants were interested, raised a strong presumption against them, which called for an explanation. Such explanation was attempted, but it was so extraordinary and so inherently improbable

that the jury evidently regarded it as fabricated to meet the dilemma in which the defendants found themselves. It was for the jury to say upon all the evidence whether the defendants were guilty as charged.

It is argued that there was no conspiracy to defraud the United States of its duties because it has not been shown that the imported articles were subject to duty. The court can take judicial knowledge of the laws of the United States. The tariff act of 1897 (Act July 24, 1897, c. 11, § 1, 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626]) provides for all articles of foreign production or manufacture. Every such article, unless on the free list, is subject to duty, if not under a specific paragraph, then under the general "catch-all" provision. Nothing can escape. The importations in question were evidently laces and lace articles. They were produced in court and it required no expert evidence to establish their general character.

Paragraph 339 of the tariff act provides for "laces, lace window curtains, tidies * * * and other lace articles; handkerchiefs, napkins, wearing apparel, and other articles made wholly or in part of lace," etc. Paragraph 390 provides for "laces, and lace articles made wholly or in part of lace," etc. It is too obvious for argument that the articles in question were dutiable, the rate of duty being immaterial in a prosecution of this character.

But it is argued that "articles the growth, produce and manufacture of the United States, when returned after having been exported," are on the free list (paragraph 483) and that it was incumbent on the government to show affirmatively that the lace articles in question were not made in the United States. We think this contention is too theoretical for practical application.

It is argued that there was no evidence submitted to the jury that the conspiracy was entered into in the Southern district of New York, though the precise exception or assignment of error which presents the question has not been pointed out. No request to charge on this point was made by the defendants, and no exception was taken to the charge.

The defendants had been in business in the southern district for years prior to October, 1906. We are referred to no evidence that they were together, during that period, at any point outside the Southern district of New York. They were there at and just prior to the time that the overt act was done and when, as the jury found, they were acting prusuant to the conspiracy between them. The point has been discussed at great length on both sides; but we deem it unnecessary to follow the arguments, which are based largely upon assumed facts and hypothetical situations. It is suggested that the conspiracy might have been formed in Syria, but how persons residing in New York could plot and plan in Damascus passes our comprehension. There is no evidence upon which the jury could find that the conspiracy was formed elsewhere than in the Southern district of New York.

It is not necessary to speculate as to the complications which might arise if the conspiracy had been originally formed in Syria or in the

Northern district of New York. It is sufficient that it was not form-ed in either place, and that at and prior to the time the act was done, which made its object effectual, the defendants were in the Southern district, acting together pursuant to its unlawful purpose.

The circumstances relating to the December entries by Petrakian were immaterial unless the defendants were connected with the trans-actions. There was evidence tending to show not only that the defend-ants were cognizant of the facts, but also that the merchandise was imported for their benefit. The jury may have so found, and if so, as before stated, the evidence bore strongly upon their intent. It showed that, but for the discovery of the fraud, the defendants were in the way to receive lace goods from the same exporters, concealed in lentils and squash, shipped under false bills of lading.

We have examined the other exceptions relating to the exclusion and admission of testimony, and are of the opinion that none presents a case of reversible error.

We are unable to find sufficient evidence to sustain the verdict against Habib Marrash. There are some suspicious circumstances and facts which seem to indicate that he had knowledge of the illegal nature of the transactions, but there is nothing which rises to the dig-nity of proof required in criminal causes. Knowledge by an alleged co-conspirator that the other defendants were attempting to defraud is not enough. Mere suspicion that he was a party to the conspiracy is not enough. United States v. Newton (D. C.) 52 Fed. 275.

The judgment is reversed as to Habib Marrash and affirmed as to the other defendants.