## STAGER v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. May 9, 1916.)

### No. 111.

1. CONSPIRACY ⊝33—PROSECUTION—ESSENTIALS OF OFFENSE.

In a prosecution under Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10201), denouncing the offense of conspiring to defraud the United States in any particular, it is unnecessary, to warrant conviction of an examiner of merchandise at the appraiser's stores of conspiring to defraud the government, to show that the government was actually defrauded.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. ⊝33.]

2. CONSPIRACY ⊝43(10)—PROSECUTION—INDICTMENT—SUFFICIENCY.

In a prosecution under Criminal Code, § 37, for conspiring to defraud the government, indictment *held* sufficient.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 97; Dec. Dig. ⊝43(10).]

3. CRIMINAL LAW ⊝150—LIMITATION—CONSPIRACY—OVERT ACTS.

Where, since the date named in an indictment charging conspiracy to defraud the government, overt acts showing a continuance of the conspiracy were committed within the period of limitations, the running of the statute is tolled.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 274, 275; Dec. Dig. ⊝150.]

4. CRIMINAL LAW ⊝427(5)—EVIDENCE—ACTS OF CONSPIRATORS.

In a prosecution for conspiring to defraud the government, where the evidence did not establish the conspiracy, letters written by accused's alleged co-conspirator, tending to show his guilt and participation in the conspiracy, are inadmissible, being hearsay.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1017; Dec. Dig. ⊝427(5).]

5. CONSPIRACY ⊝47—PROSECUTION—EVIDENCE—ADMISSIBILITY.

In a prosecution against an examiner at the appraiser's stores for conspiring to defraud the government, evidence *held* insufficient to support conviction.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. ⊝47.]

In Error to the District Court of the United States for the Southern District of New York.

Charles L. Stager was convicted under Criminal Code, § 37, of conspiring to defraud the United States, and brings error. Reversed and remanded.

Gerry & Wakefield, of New York City (Henry A. Wise and Carl E. Whitney, both of New York City, of counsel), for plaintiff in error.

H. Snowden Marshall, U. S. Atty., of New York City (Frank E. Carstarphen, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before COXE and WARD, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

AUGUSTUS N. HAND, District Judge. The defendant, Charles I. Stager, an examiner of merchandise at the appraiser's stores at New York, was indicted under section 37 of the United States Criminal Code for conspiring with George Silva and Henry Blumfeld Sciama to defraud the United States. The indictment alleged that:

"The said Silva and the said Sciama agreed with the said Stager that the said Stager should obtain secret and confidential information given by other importers of merchandise in connection with the importation of merchandise at the custom house at the port of New York, and should inform the said Silva and the said Sciama of the said confidential and secret matters and information concerning the said other importers of merchandise; and the said defendants then and there conspired and agreed together that the United States should be deprived and defrauded of the said confidential information which it had obtained from the said importers other than the said Silva and the said Sciama and that the said Silva and the said Sciama should obtain the said secret and confidential information concerning other importers."

The indictment further alleged that the Treasury Department had promulgated rules that:

" * * * Information as to valuations placed by exporters and importers upon merchandise imported into the United States shall be secret and confidential, and shall not be disclosed by officers and employés and other persons connected with the said Treasury Department, and that subordinate officers of customs shall not be permitted to give information to importers concerning the valuations placed upon merchandise imported by other importers."

The defendant, Charles I. Stager, on motion of the government for a severance, was tried alone and convicted.

[1] It is well settled that the government need not show pecuniary loss in order to establish a conspiracy to defraud. The Supreme Court held in Hass v. Henkel, 216 U. S. 462, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, that the statute was broad enough to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government, and that a conspiracy to obtain crop reports from a statistician of the Department of Agriculture in advance of the time allowed by the regulations of the Secretary of Agriculture, fell within the prohibition of the act.

[2, 3] Question has been made as to the technical sufficiency of the indictment and as to whether the statute of limitations is a bar to the action. In our opinion the indictment is sufficient, and while the statute of limitations would be a bar if nothing had been done since the date of the original conspiracy alleged to have been formed December 29, 1911, the overt acts set forth in the indictment and proved would show a continuance of the conspiracy sufficient to take the case out of the statute of limitations. Wilson v. United States, 190 Fed. 427, 111 C. C. A. 231. Without regard to these considerations, however, we think the judgment must be reversed, because the evidence offered against Stager so far failed to establish the existence of any conspiracy as to leave no question for the jury and material errors were committed at the trial.

[4, 5] Charles I. Stager was shown to have been an appraiser of feathers at the appraiser's stores, and to have appraised various goods entered at the custom house in New York, in September, 1912. It also appeared that the public were not admitted to the floor where the

appraising was done except under special permits in cases where the applicants had business requiring their presence. Besides Stager and his clerk, there were numerous employés who were upon this floor, and after the appraisals were completed, the goods were returned to the custom house where the invoices and appraisals might become known to still other persons.

The invoice valuations and the appraisals by Stager of a number of invoices in September, 1912, were set forth in a letter dated September 27, 1912, written by George Silva to Henry Blumfeld Sciama. The most that can be said to have been shown by all this is that Silva had detailed information as to the invoices appraised by Stager, and the appraisals of the latter, when information as to such matters was not readily obtainable from others than Stager and his clerk, or presumptively known by many others. Numerous people in the department might have secured access to the invoices and appraisals, but undoubtedly Stager and his clerk were the only ones in the appraiser's stores whose duty it was to know about them. The proved common knowledge of the invoices and appraisals by Stager and Silva is the only important evidence tending to show a conspiracy to divulge confidential information contrary to the regulations of the Treasury Department. The government further showed by the witness Martin that Stager condemned certain quills imported by Martin as prohibited because they were "either eagle or condor," and said to Martin, who asked him how he could fill his contract if the imported quills were condemned, that there were several firms who might fill the order, and mentioned Sciama & Co. in that connection. Another importer of feathers named Kulies testified that Stager told him in 1912 that he was bringing in his goods too cheap "by the comparison of Sciama & Co."

We cannot see that mere comparison in a conversation between the invoices of Kulies and the invoices of Sciama & Co., or the suggestion that certain feathers could be bought of Sciama & Co., would either tend to establish a conspiracy unlawfully to obtain for Sciama & Co. confidential information, or to show the continuance of a conspiracy, the formation of which had already been established.

The government proved, however, that after a subpoena duces tecum was served on George Silva to appear before the grand jury in December, 1914, a detective shadowed Stager to Silva's place of business the next day. The subpoena resulted in the surrender of the letter book of Silva containing copies of letters from Silva to Sciama, one of which contained a list of appraisals by Stager. Stager says he merely happened to go to Silva's place to secure information about the feather market; but he admits that Silva talked with him about the service of the subpoena, though not about the contents, and was agitated, and he did not record this visit in a book, as was the custom when he visited importers to secure information about the market. Stager's call at this time certainly arouses suspicion.

The case comes down to this: Was there sufficient evidence of the formation of a conspiracy for submission to a jury by reason of the fact that Stager and Silva had common information as to the

invoices and appraisals which passed through Stager's hands, and by reason of the fact that Stager went to the office of Silva the day after the service of the subpœna and the delivery to the government, as a consequence, of the incriminating letter book? We do not think these circumstances were alone sufficient to establish a conspiracy.

The government, however, attempted to strengthen its case by the introduction of certain letters both prior and subsequent to the one of September 27, 1912, written by Silva to Sciama. These letters in general contained statements that information had been obtained by Silva from Stager, and thereby conveyed such information to Sciama. When a conspiracy is once established acts and admissions of any one of the conspirators in pursuance of the conspiracy, and while it continues, are admissible against the others, upon the theory that the conspirators are agents for one another in the common enterprise. Connecticut Mutual Life Insurance Co. v. Hillmon, 188 U. S. at page 218, 23 Sup. Ct. 294, 47 L. Ed. 446. But the preliminary question whether sufficient evidence of a conspiracy has been adduced must always be answered by the court in the affirmative or the general rule of evidence excluding hearsay will render an admission of one of the conspirators inadmissible against the others. Inasmuch as we do not think the existence of a conspiracy was established, these letters were wholly incompetent and inadmissible as against Stager. But even if there had been sufficient evidence of a conspiracy, we find nothing tending to establish that any conspiracy was entered into, as alleged in the indictment, on the 29th day of December, 1911. There does not seem to be a particle of competent evidence of common knowledge on the part of Charles I. Stager and his co-conspirators, Silva and Sciama, as to the invoices and appraisals of the goods of other importers prior to September, 1912, when a copy of the list of appraisals made by Stager and sent by Silva to Sciama appears in the letter book of Silva. This common knowledge existing at a time when invoices and appraisals were guarded from publicity is the only thing in the record which could tend to show the existence of a conspiracy at any time. The only proof offered to establish a conspiracy prior to September, 1912, therefore, consisted of the letters of Silva to Sciama, which were clearly inadmissible as no competent proof to show the existence of a conspiracy during the time when these letters were written appears to have been offered. The letter of Decembr 29, 1911, addressed by Silva to Sciama was particularly prejudicial to the defendant Stager, and the admission of it would alone be sufficient to require the reversal of the judgment. This letter contained the following statement:

"Of course the $200 to Stager are well placed, and we shall have to give him more at the end of the year, if he continues to keep us informed properly."

We can find no warrant for the admission of this letter which was written at a time covered by no other or prior evidence showing the formation of a conspiracy than the letter itself. If such a letter is competent, a conspiracy could be proved by the mere letter of one man that another was implicated. The very object of the rule against hearsay was to prevent a jury from being influenced by statements of

persons who could not be subjected to cross-examination. If the letters were not in the case, we venture to say no one would think the mere possession by Silva of information which Stager had primarily within his knowledge would be sufficient to establish that Stager had given this confidential information to his codefendant.

The fact is, the incompetent letters were the basis of the judgment of conviction, which for the foregoing reasons must be reversed.