## CLARK v. UNITED STATES.*
### No. 6613.

Circuit Court of Appeals, Fifth Circuit.

Nov. 8, 1932.

Charles D. Russell, of Savannah, Ga., for appellant.

Chas. L. Redding, U. S. Atty., of Savannah, Ga., and Mahlon D. Kiefer, Sp. Asst. to Atty. Gen., for the United States.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

ᵇRehearing denied December 16, 1932.

**FOSTER, Circuit Judge.**

Appellant was convicted on an indictment charging him and a number of other named persons with conspiring to commit various offences against the United States, i. e., smuggling and fraudulently importing into the United States intoxicating liquor for beverage purposes, with intent to defraud the revenue of the United States; receiving, transporting, and possessing for sale the said liquor. The indictment recites, substantially, that it was a part of the unlawful agreement that appellant, Clark, who was then sheriff of Liberty county, Ga., would in his capacity as sheriff protect his fellow conspirators from arrest, either by state or federal authorities, by acting as a lookout or watchman and notifying them of the approach of such officers; that neither he nor any of his deputies would arrest and prosecute any of his coconspirators; and that in consideration of these services he would be paid $500 for each cargo of whisky brought into and landed in the county of Liberty. Appellant demurred to the indictment on the ground that it is duplicitous as charging a conspiracy to violate the customs laws and also a conspiracy to bribe the sheriff to influence his official conduct. The demurrer was overruled and error is assigned to that action of the court.

It is not questioned that the indictment is sufficient to charge a conspiracy to commit various federal offences. It is evident that the recitation of the activities of the sheriff and the amount to be paid him merely states part of the means by which the conspiracy was to be made effective and does not charge any separate offence. The demurrer was properly overruled. Bailey v. U. S. (C. C. A.) 5 F.(2d) 437.

Error is assigned to the admission in evidence, over objection, of the testimony of two witnesses, as follows:

C. C. Stewart testified, in substance, that Thomas told him that Haymans told him (Thomas) that the sheriff had issued a warning.

C. K. Haymans testified, in substance, that he went to the landing on Haymans' place and talked with Thomas; that Thomas was asleep and he waked him and told him the sheriff was at the house to see him; that the sheriff did not see Thomas; that later Thomas told the witness that the sheriff came to Haymans' place to tell him that Bergstrom (a prohibition officer) was there and to be careful.

It appears that Stewart and Thomas were the principal conspirators; Stewart financing the operations and importing the liquor, and Thomas attending to its disposal. Only appellant, Clark, and another man, named Way, were put on trial. Way was acquitted. Thomas was a fugitive. Stewart had been granted immunity as had other defendants. Stewart was the principal witness against appellant. He testified that he came to Savannah in the early part of May, 1930, to engage in liquor running, and met Thomas shortly thereafter. He and Thomas met the defendant Clark in the early part of April, 1931. He told Clark he wanted a landing place, a place to store liquor, and a place for unloading automobiles for distribution. Clark told him he had such places, one of them being the place of Graves. He saw the sheriff frequently thereafter and paid him $500. The first landing of liquor in Liberty county after the conversation between himself, Thomas, and the sheriff, was in the middle of April, 1931, at Haymans' place. Another cargo was landed about July 4, at Graves' place. About August 1, 1931, a second cargo was landed at Graves' place. This cargo was seized and destroyed by the appellant, Clark, and his deputies. In endeavoring to rescue it, on the highway, Stewart was shot and wounded. His further testimony is that after he was wounded he quit the business. Appellant took the stand in his own behalf and denied that he had ever made any agreement with Stewart or any one else to engage in the conspiracy; denied that he had received any money from Stewart; and denied that he had given him any aid whatever.

One of the means by which the conspiracy was to be effective was for appellant to warn the conspirators from time to time. There is no evidence in the record to sustain this allegation, except the two hearsay statements, admitted over objections, above noted.

The rule is well settled that, in certain circumstances, statements of a conspirator are admissible in evidence as an exception to the hearsay rule. The rule is clearly stated in Underhill on Criminal Evidence, §§ 492, 493, as follows:

"If a conspiracy is proved prima facie the acts or the declarations of any conspirator done in its prosecution and furtherance, or which form a part of the res gestæ of any act designed to advance the object of the conspiracy, which is already in evidence, are admissible against any or all of the conspirators. The principle at the basis of this rule is that which regulates the competency of the admissions of partners against each other.

"That the accused was not present when the declaration, which is introduced against him, was uttered by a fellow-conspirator, does not of necessity render it incompetent if it conforms to the rule in other respects. But those declarations only are admissible which are made by a conspirator during the existence of the conspiracy and in furtherance of it. The statements of a conspirator, made after the conspiracy has ceased to exist, either by success or failure, and which are merely narrative of past events (though in form a confession, i. e., an admission of the conspiracy), are not receivable against a fellow-conspirator, unless the latter was present when they were made and heard them, and expressly or by implication acquiesced in them."

As the statements were made by Thomas in August, it is possible the conspiracy had been abandoned. At any rate, they were merely a narrative of past events. And clearly they were not made by Thomas in furtherance of the conspiracy, and were not part of the res gestæ of any overt act. It would be extending the rule to unreasonable limits to permit these statements made by a coconspirator, not on trial, to be admitted. There are decisions which would seem to support a contrary conclusion, but upon close analysis they fall short of doing so. The conclusion we reach is supported by the well-considered opinion of Judge Hand in Van Riper v. U. S. (C. C. A.) 13 F.(2d) 961, at page 967, in which the pertinent decisions are collated and discussed. Considering the conflicting evidence before the jury, we cannot say that the testimony, improperly admitted, was harmless. These errors require a reversal of the judgment.

It is unnecessary to consider the other errors assigned, except as to this: The defendant offered Paul Sikes, one of his deputies, as a witness. He was interrogated as to what occurred after the third load of liquor had been seized and he had driven off with the truck under the sheriff's instructions. The fact that there was a fight in which Stewart was shot was already in evidence. Of course, the purpose was to show that the sheriff was entirely in good faith in seizing the liquor. We think the details of this transaction were too remote and irrelevant and were properly excluded.

It follows that because of the errors above discussed the judgment must be reversed.

Reversed and remanded.