ZITO et al. v. UNITED STATES.

HUBINGER CO. v. UNITED STATES.

Nos. 4894, 4895.

Circuit Court of Appeals, Seventh Circuit.
April 21, 1933.

John E. Dougherty, of Peoria, Ill., and Edward Pree, of Springfield, Ill., for appellants Zito and others.

James E. Carroll, of St. Louis, Mo., and Geo. B. Gillespie, Edmund Burke, and Louis F. Gillespie, all of Springfield, Ill., for appellant Hubinger Co.

Frank K. Lemon, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., for the United States.

Before EVANS and SPARKS, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

The appellant Frank Zito and a large number of other individuals, together with appellant, the Hubinger Company, a corporation, were charged in an indictment with entering into an unlawful conspiracy for the purpose of violating the National Prohibition Act (27 USCA). Some of the individual defendants in the indictment were granted separate trials, and a directed verdict of not guilty was ordered for other defendants. The following named persons, however, were convicted and are prosecuting this appeal, namely, Frank Zito, Jasper Blanda, Vincent Salvo, Carl Giganti, Joe Pumilia, Ernest Dinore, and Biaggio Callebrusco, together with the corporation, the Hubinger Company, hereinafter referred to as the company.

■■ Appellant company is a corporation organized and existing under the laws of the state of Iowa, with a plant located at Keokuk in that state, from which plant several car-

loads of corn sugar were shipped to some of the individual appellants. On the day of the commencement of the trial of this cause, it filed its motion for a bill of particulars, in which motion the only information sought was first, the name or names of the person or persons by or through whom it is claimed to have conspired and agreed to commit the offenses described in the indictment, and, second, when and where such person or persons, if any, did conspire and agree. Error is assigned in the overruling of such motion by the trial court. A motion for a bill of particulars is addressed to the sound discretion of the court and no error can be predicated thereon unless there is an abuse of such discretion. Wong Tai v. U. S., 273 U. S. 77, 47 S. Ct. 300, 71 L. Ed. 545.

A corporation can act only through its officers and agents, and appellant company at all times knew the names of its officers, agents, and employees. It also knew the scope of the authority of each of such persons. The names and various acts of such persons were peculiarly within the knowledge of appellant company. The trial court did not abuse its discretion, and the motion for a bill of particulars was properly overruled.

█ A jury for the trial of this cause was "tendered and accepted," and was composed of nine men and three women. One of the assignments of error is that the jury was not legally constituted and was not a valid jury. The jury was accepted by both the government and the defendants, without a challenge for cause. No question as to the competency of women to serve upon the jury was raised, either before it was accepted or at any other time during the progress of the trial. It was not even presented in the motion for a new trial, but was, for the first time, presented in the motion in arrest of judgment. It is the law that "jurors to serve in the courts of the United States, in each State respectively, shall have the same qualifications * * * and be entitled to the same exemptions, as jurors of the highest court of law in such State may have, and be entitled to at the time when such jurors for service in the courts of the United States are summoned." 28 USCA § 411. The Legislature of the state of Illinois enacted a law in 1929 wherein women were recognized as qualified to serve as jurors. That law was, however, declared unconstitutional by the Supreme Court of the state of Illinois on the 30th day of April, 1931, less than thirty days subsequent to the sentence of appellants in this case. People ex rel. v. Barnett, 344 Ill. 62, 176 N. E. 108, 76 A. L. R. 1044.

The question, therefore, presented to the court is whether appellants waived their right to object to the qualifications of the jurors and to the jury as constituted, where no challenge was made and no objection raised until after the return of the verdict. They were extended the opportunity to examine each juror called for service. It was apparent that some of the jurors were women. Had they desired to challenge them upon that ground, they had an opportunity to do so. Knowing the facts they cannot sit idly by, make no objection, and then after a verdict of guilty is returned, challenge it upon the ground that the jury was not legally constituted and was not a valid jury. Individuals called for jury service may be disqualified because of age, residence, citizenship, sex, property, etc., and might be subject to challenge for any one of these reasons, but if no objection is made and such person is permitted to remain upon the jury, the litigants being advised thereof, and the case is tried and a verdict returned, it is then too late to urge an objection for such reason. This is true even where the failure to challenge the juror may be based on excusable want of knowledge or of neglect. The excuse of want of knowledge, however, cannot be offered in this case. It is now well settled that the failure to challenge a juror for cause is waived and objection cannot be first urged after verdict. Kohl v. Lehlback, 160 U. S. 293, 16 S. Ct. 304, 40 L. Ed. 432; Alexander v. U. S., 138 U. S. 353, 11 S. Ct. 350, 34 L. Ed. 954; U. S. v. Rosenstein et al. (C. C. A.) 34 F.(2d) 630, certiorari denied 280 U. S. 581, 50 S. Ct. 33, 74 L. Ed. 631; Chase v. People, 40 Ill. 352; Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258.

The Supreme Court of the state of Illinois has recently sustained convictions in cases where the jury was composed partly of women and where defendants failed to challenge the array, but raised the question for the first time after verdict and on motion for a new trial. The failure to make the objection at the proper time amounted to a waiver. People v. Hotchkiss, 347 Ill. 217, 179 N. E. 524; People v. Gibbs, 349 Ill. 83, 181 N. E. 628.

Appellants, having failed to challenge the women jurors at the proper time, and having failed to present the question of the validity of the jury until after verdict, are deemed to have waived that question and cannot now be heard to complain.

█ The next question to be determined is whether or not there is substantial evidence

from which the jury could find the appellants guilty of the charge contained in the indictment.

It is the contention of appellants that if any offenses were committed, they were separate, substantive offenses, and not a conspiracy, as charged. The trial extended over a number of days and the evidence is therefore quite voluminous. It is, however, not necessary to review it in its entirety to establish the fact that a conspiracy did exist, as charged in the indictment. Appellant Frank Zito and one Sam Zito who was convicted in this case, but given a suspended sentence, were operating places where liquor was illegally possessed and sold in the city of Springfield early in the year 1928. Afterwards, appellant Zito purchased from appellant company large quantities of corn sugar. He also purchased large quantities of yeast and a large number of tin cans. Late in the fall of 1928, appellant Salvo joined him, and there were shipped to them at No. 930 East Carpenter street, Springfield, Illinois, eight carloads of O.K. and Tiger Brand corn sugar by appellant company. They also purchased at Tenth and Carpenter streets an average of 6,000 pounds of yeast per month from Fleischmann Company for a number of months, and a large number of tin cans, similar to those used in the transportation of alcohol. A large building on a switch track of the Chicago & Alton Railroad was leased by appellant Zito in December, 1928. The Capitol Products Company, a copartnership composed of appellants Zito, Salvo, and Blanda, was organized about the 1st of January, 1929, which company acquired a new lease for the property on the railroad switch, which had, only a few weeks prior thereto, been leased by appellant Zito. Beginning January 1, 1929, and continuing to December 2, 1929, there were sold and delivered to the Capitol Products Company by appellant company twenty-eight carloads of O.K. and Tiger Brand corn sugar. During this same period of time there were purchased by the products company more than 16,000 tin cans and approximately 45,000 pounds of yeast. Early in the year 1929, a large number of operating stills were discovered in the vicinity where the products company was located. Each still was similar in construction, and in each still house there were found O.K. and Tiger Brand corn sugar, a large number of empty corn sugar sacks of the same brand, many tin cans, and a large quantity of yeast. Appellant Giganti was an employee in the office of the products company, being the general manager of such office. According to his statements, no record of the business of the company was kept, all transactions being in cash. He was very active in connection with the purchase of corn sugar from the appellant company, having made at least one trip to its plant at Keokuk with appellants Zito and Blanda. A considerable amount of the business between the products company and the appellant company was transacted over the telephone by Giganti, representing the products company, and one McNamara, representing appellant company.

Appellant Joe Pumilia was the owner of premises upon which a large still was found in operation, together with several hundred sacks of O.K. and Tiger Brand corn sugar, a large quantity of yeast, many tin cans, receipts, etc. A large quantity of liquor was also found at his premises in August, 1928, at the time of the execution of a search warrant by federal officers.

Early in the year 1929 a large still was discovered in the course of construction on what is known as the "Holland Farm" located near a small town by the name of Calloway. Appellant Callebrusco unloaded O.K. and Tiger Brand corn sugar from a car upon a switch at that station. The truck used by him was similar in make and markings to one frequently seen at the Holland farm hauling lumber and cinders for the construction of the still upon such farm. Just prior to the time when he was seen unloading the sugar at Calloway, the Capitol Products Company had ordered from appellant company two carloads of corn sugar to be shipped and delivered to Callebrusco at Calloway—the nearest railroad station to the Holland farm. This was the sugar which he was unloading. After the seizure of the still upon the Holland farm, this corn sugar was removed from the garage of appellant Callebrusco, where he had placed it or caused it to be placed, to this same truck and transported to Springfield by appellant Dinore and another.

Within a very short time following the seizure of many of the stills in and around Springfield in the late winter and early spring of 1929, the business transacted by the products company in yeast, tin cans, and corn sugar began to diminish. As the officers became less active during the summer months of 1929 in the seizure of stills, the business of the products company again began to increase. The only products handled by it, of any consequence, were corn sugar, tin cans, and yeast.

It is useless to enlarge further upon the activities of the various parties, although

many others are disclosed. That a conspiracy existed, as alleged in the indictment, is apparent, and that each individual appellant was a member thereof is beyond question.

It is the contention of appellant company that it was engaged in a legitimate business and that all of its transactions in question were legitimate; that if a conspiracy did exist, it had no knowledge thereof and was not a party thereto. The law is well settled that mere knowledge of an unlawful conspiracy is not sufficient to make one a member thereof, but he must actively participate therein, must do something in the furtherance thereof, before he is liable as a member. Young et al. v. U. S. (C. C. A.) 48 F.(2d) 26; Thomas v. U. S. (C. C. A.) 57 F.(2d) 1039.

In order to determine, therefore, whether or not appellant company was a member of the conspiracy in this case, it is necessary to consider the act or speech and conduct of the actors, etc. It is elementary that no formal agreement is required to make one a member of a conspiracy. The fact is, formal agreements are seldom, if ever, entered into by persons when engaged in an unlawful enterprise. Actions speak just as plainly, and sometimes more clearly, than words. Corporations speak and act through their agents. There is abundant proof in the instant case that one McNamara was an agent of the appellant company and that he had authority to sell its products. Therefore, it naturally follows that his actions in contacting and selling the individual appellants and the Capitol Products Company are binding upon appellant company. The evidence shows conclusively that there were few, if any, legitimate industries in and around Springfield that required, or could use, the particular kind of corn sugar which it sold to appellant Zito and the products company. The activities of Zito and his coconspirators in and around Springfield were so extensive, especially in the handling of such a large amount of corn sugar purchased from appellant company, that two government agents visited its plant in Keokuk on the 23d day of February, 1929. They held a conference with McNamara at that time, and in that conference he displayed a complete knowledge of the illegitimate use for which the particular brand of corn sugar under consideration might be put, that is, for the manufacture of liquor. Not only that, but he admitted an attempt upon his part, as agent of appellant company, to procure a part of this kind of business. Indeed, the evidence was such that the grand jury might well have included McNamara and perhaps other individuals connected with the Hubinger Company in the indictment. If appellant company was sincere in its contention that it was not a party to the conspiracy, it would seem that it would have at least ceased doing business with the products company after this visit. However, two days later, two cars of this same kind of corn sugar were forwarded by it to the products company. These shipments continued until a total of ten cars had been shipped by it, after the visit of the government agents. Furthermore, early in the year 1929, appellant company shipped to appellant Callebrusco at Calloway, upon the order of the products company, two cars of this identical corn sugar. The company was also visited at its plant in Keokuk by three members of the products company, Zito, Blanda, and Giganti, during the existence of the conspiracy.

The question of whether appellant company was a member of the conspiracy was a question for the jury, and there being substantial evidence to sustain its verdict, it will not be disturbed.

There were other questions presented with reference to the admission of certain evidence during the course of the trial, but we can see no error in the rulings of the trial court.

The judgment of the District Court is affirmed.