## SEEMAN v. UNITED STATES.

### No. 8329.

Circuit Court of Appeals, Fifth Circuit.

May 26, 1937.

H. E. Kahn, of Houston, Tex., and Ellis. C. Irwin and David Gertler, both of New Orleans, La., for appellant.

Douglas W. McGregor, U. S. Atty., and George P. Red, Asst. U. S. Atty., both of Houston, Tex., for the United States.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Jerihem Seeman, was convicted on two counts of an indictment, numbers 1 and 4. Count No. 1 charged a conspiracy between appellant and Irwin Kott, Joseph Lee O'Neal, Edward Fein, and a number of other named persons, to defraud Lester Carter & Co., of Chicago, and other persons, by selling to them forged bonds purporting to be the genuine bonds of Eastern Shore Public Service Company, to be transported in interstate commerce, in violation of the Securities Act of 1933, 15 U.S. C.A. §§ 77a–77aa. Count 4 charged appellant and other persons named in the conspiracy with the substantive offense of shipping the forged bonds in interstate commerce by express from New York City to Houston, Tex., with intent to defraud the purchaser of said bonds, and was substantially the same as one of the overt acts alleged in count No. 1.

A motion was filed on behalf of the United States to dismiss the appeal. As to this, it is sufficient to say that the grounds urged are technical, unsubstantial, and not jurisdictional. The motion is overruled.

Error is assigned to the denial of a motion for a directed verdict and to the admission in evidence of statements by Kott, charged as a co-conspirator, made to a government agent. We may consider these assignments together.

Appellant contends that the Securities Act of 1933 does not apply to the shipment in interstate commerce of forged bonds, but is intended to prohibit only the sale of genuine securities by fraudulent means. The Securities Act of 1933 (Act of May 27, 1933) is designed to regulate the sale of securities moving in interstate commerce and covers many subjects. It is not necessary to extensively review it. Title 1, § 17 of the act (15 U.S.C.A. § 77q), so far as material, provides as follows:

"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly— * * *

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

It is difficult to imagine any transaction that would be better calculated to deceive and defraud a purchaser than to sell and ship him forged imitations of genuine bonds. The act is broad enough to cover the transaction charged as a crime in the indictment. The contention is wholly untenable.

However, an entirely different question is presented by the evidence. The record contains evidence tending to show the following facts:

On April 9, 1936, Kott, using the name of J. Ross, sent a telegraphic order for $700, addressed to appellant, Seeman, in the name of J. Courtney, at New York City. The message accompanying the money order was as follows, "Kept fifty pay my bill— I expect copies of number twenty lease here Saturday ship immediately." Appellant received the telegram and cashed the money order. The next day, April 10, 1936, Fein shipped five forgeries of the twenty-year gold bonds of the Eastern Shore Public Service Company, face value of $1,000 each, by air express, from New York City to Houston, Tex. The bonds were received by O'Neal in Houston the next day, which was Saturday. O'Neal and Kott negotiated their sale through Guaranty Securities Corporation, a firm of brokers in Houston, an innocent agent, ostensibly for the account of Sam Kaplan, a nonexistent person, to Lester Carter & Company, another firm of brokers in Chicago, to whom they were shipped in interstate commerce, with a draft attached in the sum of $5,157.50. Lester Carter & Co. delivered the bonds to their customer and remitted the proceeds to the Guaranty Securities Corporation, who in turn drew its check to the order of Sam Kaplan, on April 16, 1936, but it was not delivered, as Kott and O'Neal were arrested that morning by government agents.

Over objection of appellants, the government introduced the evidence of T. H. Sisk, an agent of the Department of Justice, who testified, in substance, that he arrested Kott and O'Neal in Kott's room in the Rice Hotel, in Houston, on April 16, 1936, where Kott was registered as Joseph Ross; that the room was searched and he found a number of documents, which he described, and a receipt for the money sent to appellant by telegraph; that he asked Kott

what this money was for and Kott told him that it was payment of a bet on a horse race, but was indefinite as to the name of the horse and when or where the race was run. Apparently, as a result of this discovery, appellant was later arrested in New York City. The witness further testified that he again interviewed Kott in the Galveston jail in June and told him that the man in New York did not say that the money was for a race horse bet and asked him if he wanted to change his story; that Kott then said, "You fellows know what that is for; why do you want to come down here and bother me about it for?"

Appellant testified that before 1931 he had been in the wholesale cleaning and dyeing business and in 1931 went into bankruptcy; that he then started to work for a book-maker, whose name was Courtney; that he gradually got to be known by that name and later on bought out the business and assumed the name; and since 1932 had been known by the name of Courtney; that he had known Kott for about five years; that he made some bets with him and that he had loaned Kott about $1,000; that Kott paid him $250 and when he got the telegram remitting the $700, he applied it on the debt; that it was illegal to make bets on horse races in New York except at the track and for that reason in their betting transactions Kott used the name of J. Ross; that he did not understand the telegram, but he knew Kott had been dealing in oil and thought he meant to tell him he would remit the balance when he received the oil lease mentioned; that he had known Fein for about three months in New York. He denied that he had anything do with the shipment of the bonds or the conspiracy to sell them, or knew anything about the transaction.

In overruling the objection to the admission of Kott's statements, the court gave the following instructions to the jury, "I am instructing the jury that it is not admissible against the defendant, but if it goes to establish the existence of a conspiracy, the defendant's connection would have to be proven by different testimony. It is only admissible for the purpose of showing a conspiracy; not admissible against the defendant."

It is the rule that statements of a co-conspirator, made while the conspiracy is active or which form part of the res gestae of an act in furtherance of the conspiracy, are admissible in evidence against all the conspirators. But declarations of a co-conspirator made after the conspiracy has terminated, by success or failure, are not admissible against any other person than himself unless that person was present when they were made. Brown v. United States, 150 U.S. 93, 14 S.Ct. 37, 37 L.Ed. 1010; Sparf and Hansen v. United States, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343; Bryan v. United States (C.C.A.) 17 F.(2d) 741; Hogg v. United States (C.C.A.) 53 F.(2d) 967; Thomas v. United States (C.C.A.) 57 F.(2d) 1039; Clark v. United States (C.C.A.) 61 F.(2d) 409.

The theory of the prosecution was that the $700 sent to appellant by Kott was for the purchase of the forged bonds and the telegraphic message was instructions to ship them. Unless this theory could be sustained there was nothing before the court to connect appellant with the transaction. The testimony of appellant that the money was sent him in payment of a debt was plausible, although perhaps not convincing, and at least presented an hypothesis compatible with innocence. Conceding that the jury could have disregarded this testimony as untrue, still, standing alone, the telegram and money order were not sufficient to support a verdict of guilty.

Had Kott been on trial with appellant, his statements would have been admissible against Kott for what they were worth but not against appellant. But the situation was different. Only appellant was on trial. The conspiracy had terminated by failure when Kott was arrested on April 16, 1936. It is at once apparent that by innuendo Kott's statements, above quoted, were highly prejudicial. They were not admissible against appellant to prove the conspiracy nor for any other purpose. Their admission constituted reversible error notwithstanding the ruling of the court as to their probative effect.

As this conclusion requires a reversal of the judgment, it is unnecessary to discuss other assignments of error.

Reversed and remanded.