POHLMAN v. BRETZ.

*Borrowing money—Lender may recover loan made to pay
gambling debt, when.*

In this state, a lender may recover from the borrower money
loaned him for the purpose of discharging a gambling
debt already incurred.

(Decided November 28, 1921.)

ERROR: Court of Appeals for Summit county.

*Messrs. Rockwell & Grant,* for plaintiff in error.
*Mr. E. C. Housel,* for defendant in error.

PARDEE, J. The defendant in error sued the
plaintiff in error in the court of common pleas of
Summit county for money which he claimed to
have loaned him on or about June 28, 1915; to
which petition an answer was filed setting forth a
general denial. A jury was waived by agreement
of the parties, and the case was submitted to the
court. The issues were found with the plaintiff
and a judgment was entered for him for the full
amount asked in the petition, and the case is now
here on error to reverse that judgment.

The facts in relation to the matter are substan-
tially as follows: For some time prior to December
4, 1914, the parties to this suit and one James Mc-
Allister, now deceased, were in a partnership for
the purpose of carrying on a general gambling en-
terprise, and the same was carried on in the city
of Akron under the name of the plaintiff in error

Gaming, 27 C. J. § 304.

for reasons which were satisfactory to the partners. On the last above-named date the said partnership was dissolved by mutual consent, the partnership money, aggregating approximately $20,-000, was divided among the partners, and the defendant in error went to another city to engage in a legitimate enterprise. Immediately upon the dissolution of the above partnership, Pohlman and McAllister formed another one to carry on the same kind of business, which was also conducted under the name of Edward Pohlman. This partnership was not so successful as the former one had been, and in a few months the partners suffered such severe losses that they became embarrassed for ready money to pay their gambling debts and issued checks for the same in excess of their balance in the bank.

At this time, Bretz, who was in Columbus, Ohio, was called by Pohlman over the long distance telephone, and at Pohlman's request sent $3,000 by special delivery mail to Pohlman at Akron. This money was sent in the form of two checks—one for $2,500, drawn on an Akron bank to the order of Pohlman and signed by the defendant in error, and the other for $500, drawn by Bretz's brother on a Columbus bank and made payable to the defendant in error, which was endorsed by him in blank. These checks were duly received by the plaintiff in error and deposited in his name in an Akron bank, and were used by him in the business which he was then conducting.

There is some dispute as to the telephone conversation which took place at the time this money was sent, Bretz claiming that Pohlman told him

over the telephone that he had got in bad at the bank and needed some money, and asked him to loan him $3,000, and Pohlman claiming that he said over the telephone that they were broke and had to send some checks out to meet the losses of that afternoon. The plaintiff in error, Pohlman, also claims that before this money was loaned he and McAllister had dissolved their partnership, that he was merely working for McAllister, and that he told Bretz that he was borrowing the money for McAllister.

The trial court found from the evidence, and there was some corroboration of Bretz's testimony by other witnesses as to the telephone conversation, that the money was loaned to Pohlman, and from our reading of the bill of exceptions we are satisfied that the trial court was justified by a preponderance of the evidence in so holding. The plaintiff in error also claims that the money was loaned with full knowledge that it was loaned for the purpose of carrying on an illegal enterprise, that only part of the money loaned was used for paying losses then sustained, and that the balance was used for future illegal purposes and therefore could not be recovered. There is not much doubt but that Bretz knew of the general character of the business then carried on by Pohlman and McAllister, but there is no evidence to show that he was a party to the illegal business, or that he in any way participated therein, either by procuring customers for it or sharing in the profits thereof, or otherwise. The evidence of both Pohlman and Bretz as to the telephone conversation indicated that the money was to be used to pay losses then sustained

in the illegal enterprise, and not for future business, and that the loan made by Bretz and the promise to repay the same by Pohlman did not have any connection with any illegal acts, because those had already taken place before the loan was made. It is true that Bretz testified on cross-examination that he loaned the money for the purpose of keeping Pohlman in the business in which he was then engaged, but whether Pohlman would continue or not was entirely a surmise or guess on his part, as the evidence, in our opinion, shows that the money was loaned solely for the purpose of paying losses that had then been sustained. We feel that this case comes within the rule announced in the case of *Armstrong* v. *Toler,* decided by the Supreme Court of the United States in 11 Wheaton, page 258 (6 Law Ed., pages 468 and 469), where, at page 268, Chief Justice Marshall approves the following holding of the lower court:

"But if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act."

But if the defendant in error thought he knew that some or all of the money might be used in an unlawful business, still this case would come within the rule stated in *Graves* v. *Johnson,* decided by the Supreme Court of Massachusetts, in 179 Mass., 53, 60 N. E., 383, where the court holds:

"Where intoxicating liquors are sold in Massachusetts with intent by the buyer to resell them in another state, contrary to the laws of that state,

the seller's mere knowledge of the buyer's intent will not prevent recovery of the purchase price.''

Chief Justice Holmes, in his opinion in this case, in part says:

''All that it is necessary for us to say now is that in our opinion a sale otherwise lawful is not connected with subsequent unlawful conduct by the mere fact that the seller correctly divines the buyer's unlawful intent, closely enough to make the sale unlawful. It will be observed that the finding puts the plaintiff's knowledge of the defendant's intent no higher than an uncommunicated inference as to what the defendant was likely to do. Of course the defendant was free to change his mind, and there was no communicated desire of the plaintiff's to co-operate with the defendant's present intent, such as was supposed in the former decision, but on the contrary an understood indifference to everything beyond an ordinary sale in Massachusetts. It may be that, as in the case of attempts * * * the line of proximity will vary somewhat according to the gravity of the evil apprehended * * * and in different courts with regard to the same or similar matters. * * * But the decisions tend more and more to agree that the connection with the unlawful act in cases like the present is too remote.''

A reading of the record in this case shows, as stated in the foregoing case, that there was no knowledge communicated by the plaintiff in error to the defendant in error in regard to the loaning of this money and the purpose for which it was to be used, except that it was being loaned for the purpose of taking care of losses already sustained.

In our opinion, the burden of proof upon this issue was upon the plaintiff in error, to show that the money was loaned for an illegal purpose and that the lender was to receive some benefit therefrom, and this burden he has failed to sustain. (See *Wyman* v. *Fiske,* 3 Allen [Mass.], 238, 80 Am. Dec., 67.) We have read the cases cited by plaintiff in error, but do not think they are applicable to the facts as found in this case. We therefore hold, in the absence of a law in this state prohibiting the recovery of money loaned for the purpose of discharging a gambling debt already incurred, that by the great weight of authority in the United States the lender is entitled to recover the same. Not finding any errors in the record, the judgment is affirmed.

*Judgment affirmed.*

WASHBURN, P. J., and TREASH, J., concur.