[Civ. No. 14134. First Dist., Div. Two. Dec. 12, 1949.]

A. J. LEITE, Appellant, v. SAMUEL DIETZ, as Executor, etc., Respondent.

Joseph A. Brown for Appellant.

Shapro & Rothschild, Arthur Shapro and Raymond Anixter for Respondent.

NOURSE, P. J.—Plaintiff sued as assignee of Caroline Trieber upon a promissory note executed by defendant J.

Louis Dietz, who deceased after judgment and pending this appeal. The substitution of his executor has been duly made, and we will herein refer to the original defendant as the promisor and to Mrs. Trieber as the promisee.

■ The facts are not materially disputed. The promisor was engaged in betting on horse races. The husband of the promisee was engaged in placing bets in the manner commonly known as running a "book." The promisor had lost heavily and at the time the note was executed was out $7,500. Mrs. Trieber testified that in June, 1947, she, at the request of her husband, took the sum of $7,500 from her safe deposit vault and gave it to her husband for the purpose of loaning it to the promisor. There was no confirmation of this testimony. The promisor testified that he executed the note at the request of Morris Trieber who then told him that he was having trouble with his wife on account of the debt. He also testified that his losses from betting were then $7,500. There is no evidence that the sum was delivered to the maker and no evidence that when the money was loaned by Mrs. Trieber she had any knowledge that it was to be used in gambling or that it was borrowed for the purpose of paying a gambling debt.

■ If the trial court had believed the testimony of Mrs. Trieber, it would present the single question whether money loaned and used to pay an antecedent gambling debt without the lender's knowledge of the intended use is so tainted with the subsequent use that it may not be recovered. The answer is found in the succinct statement in 24 American Jurisprudence, page 463: "Clearly, the lending of money which is subsequently used for the purpose of gambling is not illegal if the person who advances the money has no knowledge that it is to be used for an unlawful purpose. The general rule seems to be that in the absence of a special statute to the contrary, one who lends money to another to pay a gambling transaction in which the lender did not participate may recover the money lent. Such a loan does not fall within the purview of a statute prohibiting recovery of money lent for the purpose of gaming." Authorities are cited in the note uniformly holding that where the lender is without knowledge of the purpose of the loan, recovery can not be defeated by proof that the borrower subsequently used the money in gaming. Other authorities are cited holding that, even though the lender knew the purpose of the loan, he may recover if the money was to be used in paying an antecedent gambling debt.

The principle of these cases is that what is inhibited is the furnishing of funds to a gambler to encourage and enable him to engage in a gambling transaction. This principle is stated in *Hamilton* v. *Abadjian*, 30 Cal.2d 49, 52 [179 P.2d 804], as follows: "The owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check."

The converse of the rule is found in the second part of the Hamilton decision. The owner of the gambling place was also operating a hotel on the same premises. He cashed checks for the defendant at the hotel desk and "no restrictions were placed by the payee upon the use of the money." It was held that the hotel could recover notwithstanding evidence that some of the proceeds was used to pay gambling debts.

The principle of law involved here is that when the payee of a promissory note delivers money to the maker without knowledge of the purpose for which the maker intends to spend the proceeds his recovery on the note cannot be defeated by proof that the maker thereafter used the proceeds for an unlawful purpose. To illustrate, if a bank, in the regular course of its business, loans money to a customer on his promissory note, without knowledge of the customer's intended use of the money, it is no defense to an action on the note that the customer used the money in gambling or in payment of a prior gambling debt.

But this rule applies only in a case where the lender is without knowledge of the illegal purpose of the loan and may not therefore be treated as a party to the gambling transaction. Here the trial court found that the note was given "in settlement of a gambling obligation." The finding is based on the inference that Mrs. Trieber was not unaware of her husband's scheme to clear the gambling debt by a purported loan from her and follows from the trial court's conclusion that Mrs. Trieber's testimony relating to the delivery of the cash as a loan to Dietz could not be believed.

It was the function of the trial court to determine the truthfulness of all the testimony and the finding of no consideration should not be disturbed when reasonable inferences support it.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.