(638 P.2d 379)
No. 52,302

THE FIRST STATE BANK, Thayer, Kansas, *Appellee,* v. ROE SPENCER, *Appellant.*

Petition for review denied March 3, 1982.

Opinion filed December 31, 1981.

*Robert V. Talkington,* of Iola, for the appellant.

*Tim Brazil,* of Henshall, Pennington & Brazil, of Chanute, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

McLAUGHLIN, J.: This is an action by the plaintiff, The First State Bank of Thayer, Kansas, for judgment on a promissory note executed by the defendant, Roe Spencer, to plaintiff-bank on July 19, 1974, to pay off a gambling debt to two members of the board of directors of the bank, one being the chairman of the board and principal stockholder. The matter was submitted to the district court on a stipulated statement of facts. Defendant filed a motion for summary judgment, which was denied. Plaintiff then filed a motion for summary judgment, which was granted. Defendant appeals from this judgment.

In the latter part of April, 1974, defendant Roe Spencer, along with Larry Hudson, chairman of the board of the plaintiff, The First State Bank of Thayer, Cale Hudson, president of said bank, Dick Cornell, executive vice-president of said bank, Richard Debauge and Bob McGregor, both directors of said bank, and Art Brigham, Ed Sell and Corbett Thompson, all of Iola, went on a fishing trip to Toledo Bend, Louisiana. The trip was made in a motor home owned either by Larry Hudson or by Southeast Microwave Company, a company owned by Larry Hudson. Defendant was invited to make the trip by Larry Hudson.

During the trip, several members of the expedition indulged freely in the use of alcoholic beverages, including the defendant. A poker game was also organized with Larry Hudson, Richard Debauge and the defendant the prime participants. Markers were

used in lieu of cash, and the defendant found himself owing approximately $6,760 by the end of the trip. Due to his inebriation, the defendant was never quite sure how much money he lost.

After the fishing trip, defendant went to Seattle for three to four weeks and upon his return, he learned that Larry Hudson had been trying to contact him. Larry Hudson did later contact defendant and advised him that Richard Debauge had either written a check on Larry, or somehow put Larry Hudson in a bind, and that Hudson had to have money from defendant. Hudson suggested that defendant get the money through defendant's bank at Iola, but defendant advised him that he could not do that. Then Hudson made arrangements for the money to be obtained through his bank, The First State Bank of Thayer, plaintiff herein. The arrangements for the loan were made by Larry Hudson who directed the executive vice-president of the bank, Dick Cornell, to prepare the note for execution by defendant and to pay the proceeds over to Hudson, chairman of the board of the bank. All the arrangements for the loan, including the certified check, the promissory note, and all other papers in connection with the loan were prepared *prior* to the defendant going to the bank. The entire loan transaction was completed in five to ten minutes. The proceeds from the note (an envelope filled with $100 bills) were delivered to Larry Hudson by Dick Cornell. The note was dated July 15, 1974, but the cashier's check was dated July 19, 1974, which was the date the defendant went to the bank and the only day the defendant was in the bank concerning this transaction. That consideration for this note was a gambling debt to two members of the board of directors of the bank, one being chairman of the board, was common knowledge to all officers of the bank. The officers of the bank knew that some explanation of the basis for the note would have to be given to the bank examiners, and the explanation given was that the defendant's personal financial statement justified the making of this unsecured note.

Defendant has never paid anything on the principal of this note, but did make a number of interest payments. The last interest payment was made in January, 1978.

The defendant contends: (1) that it was error for the court to find the promissory note of defendant was not made in further-

ance of a gambling transaction and therefore was not void as against the public policy of Kansas; (2) that it was error for the court to find the promissory note of defendant was supported by valuable consideration received by defendant and was not in furtherance of an illegal transaction; (3) that it was error for the court to find that plaintiff or its officers were not a part of the illegal gambling transaction or without knowledge of the intended use of the proceeds of the promissory note; (4) that it was error for the court to find the plaintiff was not responsible for the acts of its chairman of the board and other officers and their actions concerning the defendant's promissory note; and (5) that it was error for the court to find the plaintiff was not a part of an illegal gambling transaction when it was conceded by plaintiff that its officers had full knowledge of the gambling transaction and that the intended use of the funds was to reimburse the board chairman and one of its directors who participated in the illegal gambling transaction.

The plaintiff contends: (1) that the trial court properly held that plaintiff was not a participant in the illegal transaction; and (2) that the trial court properly held that defendant's promissory note was supported by valuable consideration received by defendant and was not in furtherance of an illegal transaction.

The enforceability of antecedent gambling debts has never been determined by the Kansas courts. The majority view may be found in Annot., 53 A.L.R.2d 345, which states at 367:

"Unlike loans to enable the borrower to engage in gambling, loans extended to enable the borrower to pay antecedent gambling debts generally are recoverable by the lender, in the absence of specific statutory regulation to the contrary."

See also *Clemons v. Succession of Johnson,* 10 La. App. 230, 120 So. 664 (1929); *Pohlman v. Bretz,* 20 Ohio App. 273, 153 N.E. 139 (1921). However, would the foregoing be applicable in a situation where the transaction was all arranged by the bank's officers and directors, which gave the corporation full knowledge of the entire transaction?

Defendant advises us that in the trial court plaintiff relied upon a statement contained at 38 C.J.S., Gaming § 27, which states:

"In the absence of statute, loans made in good faith to a loser to pay his gambling losses may be recovered, even though the lender knew the purpose of the loan; and payments at the loser's request in discharge of such debts are similarly recoverable."

It appears that plaintiff and the court relied only upon a portion of the statement contained in the foregoing section 27, because the same section continues:

"However, the lending must not be a device of one of the parties to the contract to enable the winner to sue the loser for his losses, for the law pierces disguises of this sort, and will not allow the winner to recover from the loser by a subterfuge."

It appears that the promissory note transaction was actually a device for Larry Hudson, chairman of the board of the plaintiff, to enable him to recover the gambling debt from the loser through the bank.

The rules of law which have come to our attention in this case which would favor plaintiff's position contain the additional proviso that the plaintiff may recover only if the evidence shows the plaintiff was not in any way connected with or aided in the unlawful gambling contract. In 53 A.L.R.2d at 367, we find the general rule stating that loans extended to enable the borrower to pay antecedent gambling debts generally are recoverable by the lender, in the absence of specific statutory regulation to the contrary. However, further along in the annotation we find the following:

"The evidence failing to show that either the lending bank or any of its officers were in any way connected with or aided in the unlawful gambling contract which the borrower had entered into with a commission company, and such evidence showing that the 'margins' which the borrowers used the borrowed money in paying, and the illegal contract under which they accrued, had accrued before the money was loaned to them, the bank *was not particeps criminis* with the borrower . . . ." (Emphasis supplied.) Annot., 53 A.L.R.2d at 368.

See also *Lyons Milling Co. v. Goffe & Carkener,* 46 F.2d 241, 247 (10th Cir. 1931); *Leite v. Dietz,* 95 Cal. App. 2d 41, 212 P.2d 265 (1949).

In *Irwin v. Williar,* 110 U.S. 499, 510, 28 L.Ed. 225, 4 S.Ct. 160 (1884), the Supreme Court stated:

"It is certainly true that a broker might negotiate such a contract without being privy to the illegal intent of the principal parties to it which renders it void, and in such a case, *being innocent of any violation of law,* and not suing to enforce an unlawful contract, has a meritorious ground for the recovery of compensation for services and advances." (Emphasis supplied.)

It has long been the settled law of this state that enforcement of a gambling debt is against public policy and that the courts will not aid in the enforcement of such debts. In the case of *Cooney v. Hauck,* 112 Kan. 562, 563, 211 Pac. 617 (1923), our court stated:

"The contract was a wager upon the result of a game. Whether or not it was forbidden by the statute making it a misdemeanor to bet 'upon the result of any game of skill or chance, whether with dice or cards or other thing' (Gen. Stat. 1915, § 3632), it was against public policy, and courts will not lend their aid to its enforcement."

The court also cited 12 R.C.L. at 747, 748, which stated:

" 'Moreover, as a general rule, the courts of this country, in the more recent decisions, have refused to enforce all wagering contracts, even though they are not declared illegal by statute, holding that wagers of all kinds are inconsistent with the established interests of society, in conflict with the morals of the age, and void as against public policy.' " 112 Kan. at 563.

See also *Cleveland v. Wolff,* 7 Kan. 184, 187-188 (1871).

The plaintiff urges it is an innocent third party in this transaction. However, the depositions taken in this case reveal that the plaintiff and its officers were fully aware of all the circumstances involved in this transaction from its inception. The loan was arranged by the chairman of the board of the bank. The note was prepared by the executive vice-president of the bank four days prior to the defendant going to the bank and signing the same. The chairman was a participant in the poker game and received the proceeds of the loan. A director, Richard Debauge, appears to have also shared handsomely in the proceeds.

It is clear from the stipulated facts that the plaintiff had full knowledge of this fishing trip and poker game. The chairman of the board, the bank president and two more directors of the bank were present on the trip, and the chairman of the board and one of the directors were major participants in the poker game in addition to the defendant. Further, other bank officers who did not make the trip were fully aware of the fishing trip, the poker game and the purpose of the promissory note and loan made to defendant on July 19, 1974. Such knowledge must be imputed to plaintiff.

We are not ready to say that the public policy of Kansas is such that it would allow all of these bank officers, particularly the chairman of the board, the president, the executive vice-president and two other directors, to take part in illegal gambling contracts and transactions and, being unable to enforce or collect the illegal gambling debt, to transfer this to the bank, which is a distinct entity but is governed by its board of directors and officers, and to say that all the officers and members of the board of directors can do through a bank as a separate entity what they could not do

themselves, *i.e.,* collect an unlawful gambling debt, thus being able to accomplish indirectly what could not be done directly.

This case was submitted to the trial court on a stipulated statement of facts. Therefore, this court has the same opportunity to consider the evidence as the trial court. *Stith v. Williams,* 227 Kan. 32, Syl. ¶ 1, 605 P.2d 86 (1980). The knowledge of the nature and purpose of the note is imputable to the bank through the knowledge of its officers and directors. We conclude the promissory note, under the facts of this case, was made in furtherance of a gambling transaction known to the plaintiff and is unenforceable as against the public policy of this state. *Cooney v. Hauck,* 112 Kan. 562; 38 C.J.S. Gaming § 27.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.